IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-185

 Filed: 7 January 2020

Buncombe County, No. 12 CVD 2858

JOSHUA D. PAYNICH, Plaintiff,

 v.

HOLLY B. VESTAL,1 Defendant.

 Appeal by Defendant from order entered 13 August 2018 by Judge Andrea F.

Dray in Buncombe County District Court. Heard in the Court of Appeals 1 October

2019.

 Siemens Family Law Group, by Jim Siemens, for Plaintiff-Appellee.

 Michael E. Casterline for Defendant-Appellant.

 COLLINS, Judge.

 Defendant Holly B. Vestal appeals the trial court’s 13 August 2018 child

custody modification order allowing her certain visitation with her child and denying

her access to the child’s school, medical, and counseling records. Defendant argues

that the trial court erred in awarding her unreasonable visitation without finding her

 1 The caption in the order on appeal erroneously lists DEFENDANT B. VESTAL, Defendant.
All other orders and motions in the Record on Appeal before this Court reference HOLLY B. VESTAL,
Defendant.
 PAYNICH V. VESTAL

 Opinion of the Court

unfit, and erred in denying her access to the child’s records. We affirm the order for

visitation and reverse the order denying her access to the child’s records.

 I. Procedural History and Factual Background

 Plaintiff Joshua D. Paynich and Defendant Holly B. Vestal were married in

1997. Their daughter was born in March 2011, and the parties separated a year later.

In June 2012, Plaintiff filed a complaint for child custody, seeking joint custody.

Defendant filed an answer and counterclaim, seeking primary custody. The parties

divorced in May 2013. The trial court found this case to be one of high conflict, and

appointed Linda Shamblin, PhD, to act as parenting coordinator on 23 September

2013. The parties shared custody of the child until 18 June 2014, when the trial court

entered an emergency custody order, placing sole care, custody, and control of the

child with Plaintiff. On 16 September 2014, the Court entered an order for a

parenting capacity evaluation. Pursuant to this order, Defendant was awarded

supervised visitation. Smith Goodrum, PhD, was appointed to conduct the parenting

capacity evaluation.

 After a custody hearing on 15 January 2015, the trial court entered a child

custody order on 30 January 2015, finding and concluding that Plaintiff is a fit parent;

Defendant is “not presently fit to parent, except under supervised conditions[;]”

awarding Plaintiff sole care, custody, and control of the child; and awarding

Defendant four hours of supervised visitation with the child two times per week, as

 -2-
 PAYNICH V. VESTAL

 Opinion of the Court

well as opportunities for supervised visits on special days. Defendant was ordered to

undergo additional mental health evaluation and engage in therapy two times per

week. Both parents were allowed access to the child’s medical, dental, and

educational records.

 In 2016, pursuant to a motion to modify custody filed by Defendant, the court

conducted another custody hearing. The court found a substantial change of

circumstances in that Defendant appeared to be parenting appropriately within the

confines of periodic supervised visitation; Ms. Georgia Pressman, MA, LPC, was

providing therapy for the child and should “be in a position to report to the parenting

coordinator if the Defendant’s visitation with the minor child is compromising the

minor child’s proper development[;]” and the child was then five years old. The trial

court maintained the child’s sole care, custody, and control with Plaintiff. Defendant

was allowed unsupervised visits with the child on Tuesdays from 3 p.m. to 7 p.m.,

and every other Saturday from 10 a.m. to 6 p.m. Beginning in January 2017, absent

a contrary recommendation from Ms. Pressman, Defendant could also have

unsupervised visits on alternate Thursdays from 3 p.m. to 7 p.m. Defendant could

request additional daytime visits on special occasions through the parenting

coordinator. Defendant was also allowed to request supervised, extended visits of up

to five overnights during the Thanksgiving and Christmas holidays.

 -3-
 PAYNICH V. VESTAL

 Opinion of the Court

 In January 2018, Defendant filed an amended motion to modify custody. The

hearing on Defendant’s motion was conducted over four days in June 2018. On 13

August 2018, the trial court entered a child custody modification order. The trial

court made numerous findings of fact, including that “Defendant’s conduct and the

minor child’s deterioration since entry of the August 11, 2016 Order are causally

related, and constitute substantial changes of circumstance adversely and

substantially affecting and pertaining to the minor child.” The trial court continued

sole care, custody, and control of the child with Plaintiff. The trial court concluded

that the child’s visitation with Defendant should be restructured. Defendant was

allowed unsupervised, overnight visitation with the child on alternate weekends from

11 a.m. on Saturday to 3 p.m. on Sunday. The court ordered that holidays would

continue to be shared as set out in the August 2016 order, which allowed Defendant

unsupervised, daytime visits on special days, such as the child’s birthday and

Mother’s Day, and during school recesses for Thanksgiving and Christmas, but

required Defendant to request such visits from the parenting coordinator at least

three weeks in advance. Extended holiday visits of up to five overnights would still

require that Defendant be supervised.

 The order denied Defendant access to the child’s school, medical, and

counseling records. It further denied her the right to attend school events and

performances; to participate in making medical decisions involving the child; and to

 -4-
 PAYNICH V. VESTAL

 Opinion of the Court

participate in the child’s counseling, unless requested by the child’s treatment

provider. From the 13 August 2018 order, Defendant appeals.

 II. Discussion

A. Visitation

 Defendant first argues that the trial court erred by denying her reasonable

visitation without finding that she was an unfit person to have reasonable visitation,

thus violating the mandate of N.C. Gen. Stat. § 50-13.5(i).

 “The guiding principle to be used by the court in a custody hearing is the

welfare of the child or children involved.” Brooks v. Brooks, 12 N.C. App. 626, 630,

184 S.E.2d 417, 420 (1971). “While this guiding principle is clear, decision in

particular cases is often difficult and necessarily a wide discretion is vested in the

trial [court].” Id. The trial court “has the opportunity to see the parties in person

and to hear the witnesses, and [its] decision ought not to be upset on appeal absent a

clear showing of abuse of discretion.” Id. (citation omitted). An abuse of discretion

“is shown only when the court’s decision is manifestly unsupported by reason or is so

arbitrary that it could not have been the result of a reasoned decision.” Barton v.

Sutton, 152 N.C. App. 706, 710, 568 S.E.2d 264, 266 (2002) (internal quotation marks

and citation omitted).

 “A noncustodial parent’s right of visitation is a natural and legal right which

should not be denied ‘unless the parent has by conduct forfeited the right or unless

 -5-
 PAYNICH V. VESTAL

 Opinion of the Court

the exercise of the right would be detrimental to the best interest and welfare of the

child.’” Johnson v. Johnson, 45 N.C. App. 644, 646-47, 263 S.E.2d 822, 824 (1980)

(quoting In re Custody of Stancil, 10 N.C. App. 545, 551, 179 S.E.2d 844, 849 (1971)).

“In awarding visitation privileges the court should be controlled by the same principle

which governs the award of primary custody, that is, that the best interest and

welfare of the child is the paramount consideration.” Johnson, 45 N.C. App. at 647,

263 S.E.2d at 824 (citation omitted).

 “However, a trial court’s discretionary authority is not unfettered.” Hinkle v.

Hartsell, 131 N.C. App. 833, 838, 509 S.E.2d 455, 459 (1998). N.C. Gen. Stat. § 50-

13.5(i) provides, “In any case in which an award of child custody is made in a district

court, the trial judge, prior to denying a parent the right of reasonable visitation,

shall make a written finding of fact that the parent being denied visitation rights is

an unfit person to visit the child or that such visitation rights are not in the best

interest of the child.” N.C. Gen. Stat. § 50-13.5(i) (2018). Thus, before the trial court

may completely deprive a custodial parent of visitation, the statute requires a specific

finding either (1) that the parent is an unfit person to visit the child or (2) that such

visitation rights are not in the best interest of the child. Johnson, 45 N.C. App. at

647, 263 S.E.2d at 824 (citing King v. Demo, 40 N.C. App. 661, 253 S.E.2d 616 (1979)).

This Court in Johnson “construe[d] the statute to require a similar finding when the

right of reasonable visitation is denied. Thus, where severe restrictions are placed on

 -6-
 PAYNICH V. VESTAL

 Opinion of the Court

the right, there should be some finding of fact, supported by competent evidence in

the record, warranting such restrictions.” Johnson, 45 N.C. App. at 647, 263 S.E.2d

at 824.

 This Court has consistently held that limiting a parent to supervised visitation

is a severe restriction which effectively denies a parent the right to reasonable

visitation, and thus requires a finding of fact supporting such restriction. See Hinkle,

131 N.C. App. at 838-39, 509 S.E.2d at 459 (defendant awarded only supervised

visitation every other Saturday and Sunday from 9:00 a.m. to 3:00 p.m., and specified

times on holidays, and “the trial court’s findings [were] insufficient to support these

severe restrictions on defendant’s visitation rights”); Brewington v. Serrato, 77 N.C.

App. 726, 733, 336 S.E.2d 444, 449 (1985) (defendant awarded visitation privileges in

North Carolina at plaintiff’s home with others present; these “severe restrictions”

were supported by the trial court’s findings of fact); Johnson, 45 N.C. App. at 647,

263 S.E.2d at 824 (respondent awarded only supervised visitation one weekend a

month and the trial court failed to make sufficient finding to support such restriction);

Holmberg v. Holmberg, No. COA19-52, 2019 WL 4453850, at *3 (N.C. Ct. App. Sept.

17, 2019) (unpublished) (plaintiff awarded only occasional supervised visitation and

the trial court’s findings failed to satisfy the statutory mandate).

 In this case, Defendant was allowed unsupervised, overnight visits every other

weekend from Saturday at 11 a.m. to Sunday at 3 p.m. She was also allowed

 -7-
 PAYNICH V. VESTAL

 Opinion of the Court

unsupervised, daytime visits on special days, such as the child’s birthday and

Mother’s Day, and during school recesses for Thanksgiving and Christmas.

Defendant was additionally allowed supervised, extended visits of up to five

overnights during school recesses for Thanksgiving and Christmas. Although

Defendant’s extended overnight visits during school recesses for Thanksgiving and

Christmas must be supervised, the vast majority of her time with the child is

unsupervised.

 Defendant argues that absent a finding that Defendant is unfit, “she should be

receiving far more time with her daughter, even if the time is confined to weekends[,]”

and “it is unreasonable and unlawful, under Johnson v. Johnson, . . . to require

supervision of any of [Defendant’s] visits with her daughter.” However, we conclude

that the parameters placed on Defendant’s visitation are not the type of “severe

restrictions” our case law has determined effectively deny the right of reasonable

visitation. Accordingly, N.C. Gen. Stat. § 50-13.5(i)’s mandate, as interpreted by

Johnson, is not applicable here, and the trial court did not err by entering the

visitation order without finding that Defendant was an unfit person to have

reasonable visitation.

 Defendant also argues that the supervised visitation ordered during

Defendant’s extended visits with the child is unsupported by the findings or the

evidence. Defendant argues, “Having concluded that regular, unsupervised

 -8-
 PAYNICH V. VESTAL

 Opinion of the Court

overnight weekend visits with [Defendant] are beneficial to the minor child, it is

irrational for the trial court to require extended holiday visits – visits which are

limited to five nights, by the previous order – to be supervised.”

 The trial court made the following relevant findings of fact:

 11. The Court received testimony from Georgia Pressman,
 the minor child’s therapist. . . . With respect to Ms.
 Pressman’s testimony, the Court finds[:]
 a. Ms. Pressman’s therapy with the minor child
 began in June of 2015 and has continued until
 recently.
 b. The minor child was 4 years old when therapy
 began. Ms. Pressman described that at the
 beginning of therapy, the minor child was
 “integrated” which the Court takes to mean
 developing appropriately.
 c. Ms. Pressman has seen, over the course of her
 treatment of the minor child, a gradual decline in
 the minor child’s well-being. . . .
 ....
 g. The minor child commenced Kindergarten and
 commenced unsupervised visits with the Defendant
 in August of 2016. The Plaintiff shared with Ms.
 Pressman that the minor child was pushing limits
 and behaving aggressively following unsupervised
 contact with the Defendant. The Court finds the
 Plaintiff’s report credible.
 ....
 l. On December 16, 2016, the Plaintiff advised Ms.
 Pressman that the minor child was soiling her
 underpants several times a day, since visitation with
 the Defendant over the 2016 Thanksgiving holiday.
 Prior to the holiday, these accidents were happening
 only 1-2 times per month. The Court finds the
 Plaintiff’s report to Ms. Pressman to be credible.

 -9-
 PAYNICH V. VESTAL

 Opinion of the Court

 ....
 o. On August 2, 2017, the minor child met with Ms.
 Pressman after an extended visit with the
 Defendant and maternal grandparents. In private
 session, Ms. Pressman noted the minor child’s
 dollhouse play was aggressive and Ms. Pressman
 noted that play between imaginary children and
 Defendant was aggressive.
 ....
 x. Ms. Pressman stated that the minor child is
 traumatized by . . . Defendant’s behaviors such as
 those witnessed by the minor child on February 1,
 2018, more particularly described below.
 ....
12. The minor child was developing appropriately,
relatively healthy, and happy, and integrated, as testified
to by Georgia Pressman, when the order of August 11, 2016
was entered. At the time of this hearing, the credible and
competent evidence suggests that the minor child is
struggling developmentally, mentally, emotionally, and
physically.
....
20. The Defendant was called as her own witness in this
proceeding. From her testimony, the Court finds that:
 ....
 c. The Defendant has unnecessarily complicated the
 minor child’s life and caused the minor child stress.
 d. The Defendant admits that she played a game
 with the minor child that involved the child touching
 her breast, that it was funny to her and that the
 minor child laughed to the point that she wet
 herself. The Defendant is unwilling or unable to
 acknowledge that this degree of stimulation for the
 minor child is not healthy for the minor child and
 compromises the minor child to [sic] return to
 homeostasis following visits.

 - 10 -
 PAYNICH V. VESTAL

 Opinion of the Court

e. That the Defendant did testify that she respects
the Plaintiff’s religious beliefs and has no objection
to the minor child being raised in a Christian home,
however, she believes that her education should be
separate and apart from that, as a considerable
amount of school time is devoted to such studies and
the child should be exposed to religion, but
ultimately able to choose her own path.
f. The Defendant is unable or unwilling to follow the
court Order with respect to picking up the minor
child, dropping off the minor child and has
consistent difficulty maintaining boundaries with
the Plaintiff and others. Specific incidences of this
behavior include, but are not limited to, the
following:
 i. On June 20, 2017, the Defendant
 vandalized the Plaintiff’s truck during an
 exchange of [the child];
 ii. On September 12, 2017, the Defendant was
 unable to follow directions in a car pick up
 line. The Defendant’s behavior was angry
 and irrational and on full display to the minor
 child. This incident was unnecessary and
 confusing for the minor child.
 iii. On February 1, 2018, the Defendant
 caused a scene in Ms. Dowdy’s classroom in
 front of the minor child. At an exchange that
 night, the Defendant admits leaning against
 the Plaintiff’s vehicle. The vehicle was again
 scratched, though the Defendant denies
 scratching the vehicle. The Defendant left the
 place of exchange and drove to the Plaintiff’s
 house, parking in proximity to the Plaintiff’s
 driveway. As the Plaintiff returned from the
 exchange to his home, with the minor child in
 the car, the Defendant stood between the
 Plaintiff’s vehicle and the Plaintiff’s
 driveway. The Defendant stood in the
 headlights, in plain view of the minor child,

 - 11 -
 PAYNICH V. VESTAL

 Opinion of the Court

and struck a pose, patting her posterior. The
Defendant appears not to understand that
this strange behavior traumatizes the minor
child, who was traumatized. This incident
was unnecessary and confusing for the minor
child.
....
v. On March 28, 2018, the Defendant refused
to exchange the minor child on time and
refused to exchange in the typical place of
exchange. The Defendant and her friend
Maria Curran hid the minor child from the
Plaintiff, causing him to run back and forth
between the typical place of exchange, and
Hickory Tavern where the Defendant claimed
to be. The Plaintiff ultimately found the
Defendant and minor child on the street in
vicinity to Hickory Tavern. This incident was
unnecessary and confusing for the minor
child.
vi. On April 1, 2018, the Defendant dropped
the minor child off at the Plaintiff’s house
while the Plaintiff was waiting at the usual
place of exchange. No one was at the
Plaintiff’s house, though the Defendant
assumed otherwise. The Plaintiff left the
place of exchange, returned to his home, and
found the minor child walking on his
driveway. This incident was unnecessary.
This incident was unnecessary and confusing
for the minor child.
....
viii. All the foregoing incidents have occurred
while the Defendant has been in regular
therapy with Dr. Katy Flagler. Despite
therapy, the Defendant has been unable to
regulate her behavior in order to avoid
unnecessary incidents that are confusing for

 - 12 -
 PAYNICH V. VESTAL

 Opinion of the Court

 the minor child. These behaviors appear to be
 overlooked by the Defendant’s own therapist.
 ix. All the 2018 incidents recited above have
 occurred since the Defendant filed her Motion
 to Modify custody, seeking additional time
 with the minor child. Despite knowing that
 her conduct would be explored in the course of
 a hearing on her motion to modify custody, the
 Defendant has persisted in unnecessary
 incidents that are confusing for the minor
 child.
....
24. While there have been several events in the minor
child’s life that have been unsettling to her since August
11, 2016, the Court finds that the minor child’s relationship
with the Defendant, and her visitations doing [sic] the
school week, with the Defendant, have been deleterious to
the minor child’s well-being developmentally, mentally,
emotionally, and physically.
25. In finding that the minor child’s well-being has
declined since August 11, 2016, the Court relies heavily on
testimony received from Georgia Pressman, the minor
child’s therapist during the relevant period; testimony
from Melanie Dowdy, the minor child’s 1st grade teacher
at Asheville Christian Academy; testimony from Susan
Montgomery, Head of the Lower School at Asheville
Christian Academy; and, from Dr. Deidre Christy, who
performed the Psychoeducational Evaluation.
29. The Court finds that the Defendant has disrupted the
minor child’s education, and increased the minor child’s
stress level, unnecessarily.
30. The stress the Defendant has caused the minor child is
evident in the records of Ms. Pressman, and a part of the
environmental stress identified by Dr. Christy.
31. The stress the Defendant causes the minor child must
be mitigated so that the minor child can learn, and so that
any learning difference or disorder, if any, can be properly

 - 13 -
 PAYNICH V. VESTAL

 Opinion of the Court

 identified and so that further interventions, if any are
 required, can be implemented.
 ....
 35. That the child would benefit from having her time with
 the Defendant normalized and be able to spend an
 overnight at in [sic] the home of the Defendant, provided
 the Defendant can engage with the minor child in a manner
 that does not cause the minor child psychological harm.
 ....
 38. The Defendant’s conduct and the minor child’s
 deterioration since entry of the August 11, 2016 Order are
 casually [sic] related, and constitute substantial changes of
 circumstance adversely and substantially affecting and
 pertaining to the minor child.

 “In a child custody case, the trial court’s findings of fact are conclusive on

appeal if supported by substantial evidence, even if there is sufficient evidence to

support contrary findings.” Cox v. Cox, 238 N.C. App. 22, 26, 768 S.E.2d 308, 311

(2014) (citation omitted). Any unchallenged findings are binding on appeal. Koufman

v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

 Although Defendant asserts that “[t]here is no evidence that [Defendant] is

engaged in any behavior which would create any risk to her daughter[,]” Defendant

does not specifically challenge any findings of fact as unsupported by the evidence;

they are thus binding on this Court. Koufman, 330 N.C. at 97, 408 S.E.2d at 731.

Moreover, the findings are supported by record evidence, including the testimony of

Ms. Pressman, Melanie Dowdy, Susan Montgomery, and Defendant herself. These

findings specifically indicate that the child’s well-being has declined since August 11,

 - 14 -
 PAYNICH V. VESTAL

 Opinion of the Court

2016; Defendant’s behavior has caused the child stress; the child’s relationship with

Defendant has been deleterious to the child’s well-being; numerous incidents of

Defendant’s misbehavior have occurred since Defendant filed her motion to modify

custody, seeking additional time with the child, despite knowing that her conduct

would be explored in the course of a hearing on her motion to modify custody;

Defendant has been unable to regulate her behavior in order to avoid unnecessary

incidents that are confusing for the child; Defendant has persisted in unnecessary

incidents that are confusing for the child; the child behaved aggressively following

unsupervised contact with Defendant; after an extended visit with Defendant, the

child’s play was aggressive; the child would benefit from being able to spend an

overnight in the home of Defendant, provided that Defendant can engage with the

child in a manner that does not cause the child psychological harm. These findings

amply support the trial court’s conclusion and decree that it is in the best interest of

the child that Defendant be supervised for extended visits.

B. Access to Records

 Defendant next argues that the trial court erred by denying her access to her

daughter’s medical, educational, and counseling records, when there was no

determination that her access to those records would negatively impact her

daughter’s welfare.

 - 15 -
 PAYNICH V. VESTAL

 Opinion of the Court

 We review a trial court’s order denying a parent access to a child’s records

involving the health, education, and welfare of the child under an abuse of discretion

standard. Brooks, 12 N.C. App. at 630, 184 S.E.2d at 420 (a trial court’s decision in

a child custody matter “ought not to be upset on appeal absent a clear showing of

abuse of discretion”).

 Pursuant to N.C. Gen. Stat. § 50-13.2(b), “each parent shall have equal access

to the records of the minor child involving the health, education, and welfare of the

child[,]” “[a]bsent an order of the court to the contrary[.]” N.C. Gen. Stat. § 50-13.2(b)

(2018). It is well established that the fundamental principle underlying North

Carolina’s approach to controversies involving child custody is that “the best interest

of the child is the polar star.” In re Montgomery, 311 N.C. 101, 109, 316 S.E.2d 246,

251 (1984).

 In Huml v. Huml, 826 S.E.2d 532 (N.C. Ct. App. 2019), this Court affirmed the

trial court’s order prohibiting defendant from obtaining “any information concerning

the minor child including, but not limited to, requesting information through third

party care givers, teachers, medical professionals, instructors or coaches[,]” where the

findings of fact supported a determination that such prohibition was in the child’s

best interest. Id. at 540. While “agree[ing] that it is unusual for a parent to have

such limited rights regarding his child,” id. at 548, this Court determined that the

 - 16 -
 PAYNICH V. VESTAL

 Opinion of the Court

trial court did not abuse its discretion by eliminating his defendant’s access to

information based upon the specific facts of the case:

 In Finding of Fact 68, which has 23 subsections, the
 trial court noted the factual basis for the restrictions even
 to obtaining information from third parties. Father’s
 actions and threats affected many third parties associated
 with the family, to the detriment of Susan. Mother’s
 employer required her to “work from home because of
 safety concerns at her employer’s office.” At the time of the
 hearing, Mother had been working from home almost a
 year. Father’s threats and actions made third-party
 professionals trying to help this family sufficiently
 concerned about their own safety they would not see him
 unless another person was present and at one point the
 child’s pediatrician stopped seeing her because of Father’s
 actions. The trial court found that Father’s “anger and
 rage” are disturbing and have “had a detrimental impact
 on not only the minor child to not feel safe around the
 Defendant but the Plaintiff, her parents, Plaintiff’s friends,
 Plaintiff’s co-workers and various professionals involved
 with this family.”
 The trial court also made detailed findings regarding
 Father’s failure to follow the requirements of prior orders.
 Based upon the trial court’s findings, if Father could
 continue to contact third parties such as teachers,
 physicians, and coaches to get information about the child,
 based upon his past behavior, it is likely that his anger and
 threats would make them fearful for their own safety, just
 as the third parties described in the order were. And to
 protect their own safety and the safety of their workplaces,
 these third parties may reasonably refuse to work with
 Susan, continuing to interfere with her ability to lead a
 normal life.
 Besides endangering the third parties who deal with
 Susan, allowing Father to contact them to get information
 about Susan would endanger Mother and Susan directly.
 Some of Father’s actions were unusual and disturbing,
 such as taking the child to sit in a rental car in a parking

 - 17 -
 PAYNICH V. VESTAL

 Opinion of the Court

 garage with him when he was supposed to be visiting in a
 public place. Father had a car of his own but rented a car
 and backed into a parking space for these visits, apparently
 to avoid detection; this surreptitious behavior raises
 additional concerns. And if he were allowed to get
 information from third parties, Father would necessarily
 learn the addresses and locations where Mother and Susan
 could be found. For example, if Father were permitted to
 obtain Susan’s educational information, he would have to
 know the name and location of her school, and he would
 learn from the school records which classes Susan attends
 and her usual daily schedule; he could then easily find
 Mother’s home simply by following Susan’s school bus or
 following any person who picks her up from school.

Id. at 548-49. This Court determined that “[u]nder these circumstances, it is in

Susan’s best interest to prevent Father from having access to information about her

education and care because it protects Mother, Susan, and third parties who deal

with them.” Id. at 549. Thus, “[t]he trial court’s detailed and extensive findings of

fact support the decretal provisions, including barring Father from obtaining

information from third parties.” Id.

 Although this Court did not tie its analysis to the provisions of N.C. Gen. Stat.

§ 50-13.2(b), we find its analysis instructive here. In the present case, the trial court

made the following findings of fact relevant to its determination to deny Defendant

access to the child’s records:

 15. The Court received testimony from Dr. Chris Mulchay,
 Clinical Psychologist.
 ....
 j. Dr. Mulchay did not identify any issues which give
 him concern as to the Defendant’s risk as a parent.

 - 18 -
 PAYNICH V. VESTAL

 Opinion of the Court

....
17. The Court received testimony from Dr. Linda
Shamblin, the parenting coordinator in this case. With
respect to Dr. Shamblin’s testimony, the Court finds that:
 ....
 c. Dr. Shambling (sic) has encouraged the
 Defendant to communicate with the school and
 teachers but not with the minor child’s therapist.
 That Dr. Shambling did so to protect the
 child/therapist relationship, with the hope that the
 child therapist would not get embroiled in the
 parent’s relationship.
 d. Dr. Shamblin testified that the information
 sharing between the parents is not good. . . .
 ....
 u. Dr. Shamblin testified about her relationship
 with [Asheville Christian Academy] and denies
 having “set it up” in a way that was adverse to the
 Defendant. That the school asked what the
 Defendant had done to get such restrictive visitation
 and whether it involved drugs or criminal behavior.
 That the school was clearly trying to make sure that
 it was keeping its other students safe. That Dr.
 Shamblin did tell the school [Defendant] had mental
 health issues however, Dr. Shamblin told the school
 authorities that she felt that the school would be safe
 and that the Defendant did not pose a threat to the
 safety of the other students.
 v. That the Defendant’s animosity toward Dr.
 Shamblin has compromised Dr. Shamblin’s ability to
 effectively fulfill her role as the parenting
 coordinator.
 w. Dr. Shamblin does not desire to stay in the case,
 but she is not asking to withdraw. Dr. Shamblin
 would prefer the Court make a decision to whether
 or not a new parenting coordinator would be
 ultimately, in the best interest of the minor child.

 - 19 -
 PAYNICH V. VESTAL

 Opinion of the Court

18. The Court received testimony from Melody Dowdy.
Melody Dowdy was the minor child’s First Grade Teacher
at Asheville Christian Academy. With respect to Ms.
Dowdy’s testimony, the Court finds that:
 ....
 e. Ms. Dowdy has had conflict with the Defendant
 in her classroom. On February 1, 2018, the
 Defendant became visibly agitated in Ms. Dowdy’s
 classroom, in front of the minor child, classmates
 and other parents, at pick up time. The Defendant
 abruptly left the classroom without taking the minor
 child then was heard to call out for “little Danika” in
 the hallway. Ms. Dowdy sent the minor child to her
 Defendant.
 f. Ms. Dowdy had a second incident with the
 Defendant in her classroom on February 6, 2018
 when the Defendant was expressing frustration
 related to not receiving information from the school.
 In front of the minor child, the Defendant advised
 Ms. Dowdy that she would be returning to Court to
 address her dissatisfaction with the level of
 information she was being provided. This second
 incident also made Ms. Dowdy uncomfortable. This
 second incident also occurred in front of classmates
 and other parents.
 g. Ms. Dowdy has observed other unusual behaviors
 from the Defendant. These include the Defendant
 coming in Ms. Dowdy’s classroom while class is in
 session while Ms. Dowdy is still teaching and sitting
 in the hallway outside Ms. Dowdy’s class with a
 raincoat over her head covering her person while Ms.
 Dowdy’s class is in session. The minor child
 witnesses these incidents.
 ....
19. The Court received testimony from Ms. Susan
Montgomery who is the Head of the Lower School at
Asheville Christian Academy. From Ms. Montgomery’s
testimony the Court finds:

 - 20 -
 PAYNICH V. VESTAL

 Opinion of the Court

 ....
 b. Ms. Montgomery has had several interactions
 with the Defendant that have been negative. The
 first coincided with the beginning of school when the
 Defendant detected an irregularity on [the child’s]
 name card, which read Paynich rather than Vestal.
 c. The second incident occurred in the school pick up
 line on September 12, 2017 when the Defendant was
 unable to follow directions. The Defendant became
 angry during this incident, using profanity to
 address Ms. Montgomery, in a lo[u]d voice, audible
 to parents, teachers, staff and students, including
 the minor child. Ms. Montgomery relayed a credible
 account of this incident, which could have been
 avoided by the Defendant.
 d. After the September 12, 2017 incident, the
 February 1, 2018 incident and the February 6, 2018
 incident, the Defendant was banned from school.
 ....
 g. Allowing the minor child to return to Asheville
 Christian Academy for Second Grade was a difficult
 choice for the school, but [the minor child] can return
 for Second Grade.
 29. The Court finds that the Defendant has disrupted the
 minor child’s education, and increased the minor child’s
 stress level, unnecessarily.
 Based upon these findings, the trial court ordered, adjudged, and decreed, in

relevant part, as follows:

 2. The Defendant shall not have a right to school records,
 nor shall the Defendant have a right to attend school
 events or performances at this time.
 3. The Defendant shall not have a right to medical records
 of the minor child and shall not have a right to participate
 in making medical decisions at this time.

 - 21 -
 PAYNICH V. VESTAL

 Opinion of the Court

 4. The Defendant shall not have a right to counseling
 records of the minor child and shall not have a right to
 participate in the minor child’s counseling unless it is at
 the request of the minor child’s counselor/treatment care
 provider.

 The findings of fact do not support a conclusion that it was in the best interest

of the child to prevent Defendant from accessing the child’s school, medical, or

counseling records. While the findings indicate that Defendant’s behavior at the

child’s school was disruptive, caused the child unnecessary stress, caused the child’s

teacher discomfort, and resulted in the head of the lower school banning Defendant

from the school property, unlike in Huml, the findings do not indicate that her

behavior “made third-party professionals trying to help this family sufficiently

concerned about their own safety[.]” Huml, 826 S.E.2d at 548. To the contrary, “Dr.

Shamblin told the school authorities that she felt that the school would be safe and

that the Defendant did not pose a threat to the safety of the other students.”

Moreover, the disruption, stress, and discomfort caused by Defendant’s actions at the

school were addressed by the school banning her from its premises and the trial

court’s order prohibiting her from attending school events and performances, and

eliminating her weekday visitation thereby eliminating her responsibility to pick up

her daughter from school.

 Additionally, unlike in Huml, the findings do not indicate that Defendant’s

continued ability to contact teachers, physicians, and other third parties to get her

child’s records would make them fearful for their own safety, or have any other direct

 - 22 -
 PAYNICH V. VESTAL

 Opinion of the Court

or indirect negative effect on the child. Most significantly, unlike in Huml where the

findings showed that it was in the child’s best interest to prevent Father from having

access to information about her education and care because it protected the child, the

child’s mother, and third parties who dealt with them, no findings in the order before

us show that Defendant’s access to the information contained in the records would

have a dangerous or even negative effect on the child or anyone dealing with the child,

or that preventing Defendant from having access to the information contained in the

records would protect the child or anyone dealing with the child.

 As the trial court’s findings of fact do not support a determination that it is in

the child’s best interest to prevent Defendant from having access to the child’s school,

medical, or counseling records, we reverse the decretal provisions denying her such

access.

 III. Conclusion

 We affirm the 13 August 2018 order as it relates to Defendant’s visitation and

reverse the decretal provisions of the order denying Defendant access to the child’s

school, medical, and counseling records.

 AFFIRMED IN PART and REVERSED IN PART.

 Chief Judge MCGEE and Judge HAMPSON concur.

 - 23 -