MICHAEL THOMAS JOHNSON v. DORIS BATTEN JOHNSON

No. 799DC514

(Filed 18 March 1980)

Divorce and Alimony § 25.12— child custody—visitation privileges—restriction—
insufficiency of findings of fact

Where severe restrictions are placed on a parent's visitation rights with his child, there should be some finding of fact, supported by competent evidence in the record, warranting such restrictions; the trial court's findings in a child custody proceeding that respondent mother had abandoned her child and that it would not be in the best interests of the child for him to be carried back and forth between N. C., home of the father, and N. J., home of the mother, were insufficient to support the trial court's order restricting respondent's visiting privileges, which were limited to one weekend a month, to occasions only when petitioner father or his designated representative was present.

APPEAL by respondent from *Wilkinson, Judge*. Order signed 28 September 1979 in District Court, GRANVILLE County. Heard in the Court of Appeals 26 November 1979.

This is a civil action involving the custody of a minor child. Petitioner-father filed a petition in August 1977 seeking permanent custody of Thomas Hinton Johnson II, then age 3, the minor child born of his marriage to respondent. In his pleadings petitioner-father alleged that respondent-mother had abandoned the petitioner and the minor child on 12 August 1975 and that he was the fit and proper person to have custody of the child. Respondent-mother answered, denying the allegations of abandonment and counterclaimed for an award of permanent custody of said child, alleging that she was the fit and proper person to exercise such custody.

Johnson v. Johnson

A hearing was held before Judge Wilkinson at the 22 August 1978 Domestic Session of District Court in Granville County at which both parties offered evidence. Petitioner-father testified that he and respondent were married in April 1973 and that their son was born in March 1974. On 4 August 1975 petitioner-father returned from work to the parties' home in Durham to find a note written by respondent-mother in which she stated that she was leaving him and the baby. Petitioner-father remained in Durham for several months, but then moved with the minor child to live with his sister in Oxford, where he remained until the time of the hearing. While petitioner-father is at work, his sister's children and his cousin's wife have been caring for the boy. Petitioner-father further testified that respondent-mother continued to live in Durham for some time after the separation. He would occasionally see her standing around the street in uptown Durham and received some telephone calls from her in which she told him of her experiences with other men. Petitioner stated that respondent visited the child on two or three occasions in 1976. In 1977, after respondent-mother had moved to New Jersey, she returned to visit the minor child approximately four times, and in 1978, four or five times. On none of these occasions did petitioner-father permit respondent-mother to leave the house with the child.

Respondent-mother testified that she left her husband after an argument and attempted to take the child with her but was prevented from doing so when petitioner threatened her with a revolver. For several months she lived in Durham with a girl friend. She then moved to New Jersey in October 1976, and she asked petitioner to move there with the child. After five and one-half months respondent-mother returned to Durham and shared a five-room house with her sister and worked. During that time she consulted her attorney to attempt to arrange visitation with the minor child, and she also made numerous attempts to contact her husband to see the child. On the approximately eight occasions when she did visit with the child, she was not permitted to leave the house with him alone. In November 1977 she returned to New Jersey and moved in with her mother. From that time until the time of the hearing, respondent-mother has remained a citizen and resident of New Jersey.

Following the hearing, the trial judge signed an order on 28 September 1978 finding as facts that respondent-mother had

abandoned the child on 12 August 1975 and that between 12 August 1975 and the date of the hearing respondent-mother visited with the child "a very few times and only sent him a couple of cards." The court also made the following findings:

10. That the petitioner is a fit and proper person to have the care, custody and control of the minor child born to petitioner and respondent, to wit: Thomas Hinton Johnson, II, age three years, and that it is in the best interest of said child that he be placed in the care, custody and control of his father, the petitioner herein.

11. That the child is of such a tender age and has been in the care, custody and control of his father, the petitioner since abandonment by the respondent, it is not in the best interests of said child to be taken from the home or out of the company of his father or someone else close to the minor child and carried to the State of New Jersey.

Based upon the findings of fact, the court concluded that petitioner-father was the fit and proper person to have the custody and control of the minor child subject to certain visitation rights of respondent-mother. The court ordered that respondent-mother "be allowed to visit with said minor child one weekend of each month, provided that such visitation take place within the presence of the father or some other designated representative of the father." From this order respondent-mother appeals.

*R. Gene Edmundson for petitioner appellee.*

*Charles A. Bentley, Jr., for respondent appellant.*

PARKER, Judge.

Respondent-mother has not assigned error to that portion of the judgment awarding primary custody and control of the minor child, Thomas Hinton Johnson, to petitioner-father. Her contention is that the court erred in ordering her visitation with the minor child restricted to one weekend each month "within the presence of the father or some other designated representative of the father."

A noncustodial parent's right of visitation is a natural and legal right which should not be denied "unless the parent has by

conduct forfeited the right or unless the exercise of the right would be detrimental to the best interest and welfare of the child." *In re Custody of Stancil*, 10 N.C. App. 545, 551, 179 S.E. 2d 844, 849 (1971). In awarding visitation privileges the court should be controlled by the same principle which governs the award of primary custody, that is, that the best interest and welfare of the child is the paramount consideration. *Swicegood v. Swicegood*, 270 N.C. 278, 154 S.E. 2d 324 (1967). The purpose of the award should not be to punish or reward a parent by withholding or granting the right of visitation. *See, In re McCraw Children*, 3 N.C. App. 390, 165 S.E. 2d 1 (1969).

G.S. 50-13.5(i) provides that "[i]n any case in which an award of child custody is made in a district court, the trial judge, prior to denying a parent the right of *reasonable* visitation, shall make a written finding of fact that the parent being denied visitation rights is an unfit person to visit the child or that such visitation rights are not in the best interest of the child." (Emphasis added.) Clearly, the statute requires an appropriate finding of fact before the trial judge may completely deprive a noncustodial parent of the right of visitation. *King v. Demo*, 40 N.C. App. 661, 253 S.E. 2d 616 (1979). However, we construe the statute to require a similar finding when the right of *reasonable* visitation is denied. Thus, where severe restrictions are placed on the right, there should be some finding of fact, supported by competent evidence in the record, warranting such restrictions.

In the present case the award of visitation privileges to respondent-mother is indeed restrictive. On the weekend per month when she is allowed to visit with the minor child, respondent-mother is only permitted to do so in the presence of the father or his designated representative. The court did find as a fact that respondent-mother had abandoned the child on 12 August when she moved out of the parties' home in Durham. Although evidence as to the circumstances of respondent-mother's leaving was conflicting, there was competent evidence in the record that she indicated in a note to her husband that she was leaving and intended the child to remain with him. The finding of fact, being supported by competent evidence, is conclusive on this appeal. *Crosby v. Crosby*, 272 N.C. 235, 158 S.E. 2d 77 (1967). However, that finding by itself does not support the type of restriction placed upon respondent-mother's visitation rights in

the present case. The general rule is that abandonment, by itself, does not constitute sufficient ground to deny visitation rights completely, *see*, Annot., 88 A.L.R. 2d 148, § 15, pp. 201-204 (1963), and this rule is in accord with the principle adopted by our courts that the purpose of denying custody or visitation rights is not to punish the noncustodial parent. *See, In re McCraw Children, supra.* Similarly, the purpose of imposing restrictions on those rights should not be to punish, but to protect the welfare of the child.

The only other finding of fact relevant to the award of visitation rights recites that "it is not in the best interests of said child to be taken from the home or out of the company of his father or someone else close to the minor child and carried to the State of New Jersey." In view of the tender age of the child, the trial judge acted within his discretion in determining that it would not further the child's welfare to have him carried back and forth between North Carolina and New Jersey to visit with his mother. However, that finding does not support the provision in the award preventing respondent-mother from visiting with the child out of the presence of petitioner-father or his representative. The record does not disclose that respondent-mother has ever attempted to carry the child away from this state without his father's consent, nor that the danger exists that she would do so now unless her visits are supervised. Neither does the record disclose that the child has ever been harmed physically by respondent-mother such that it would be inadvisable to permit her time alone with him. In any event, if there were evidence of this kind, the trial court was required to make findings of fact to support the restrictions imposed. Where hostilities exist between estranged parents, it may be difficult for the noncustodial parent to maintain a relationship with his or her child when required to exercise visitation only in the presence of the other parent or a member of the other parent's family who may share such hostilities. There are, of course, circumstances warranting such restrictions, but if they are imposed, they must be based on appropriate factual findings. In the absence of any such findings in the present case, we hold that the trial court erred in so limiting respondent-mother's visitation rights. Accordingly, that portion of the award relating to respondent-mother's visitation rights is vacated, and the case is remanded for further proceedings not inconsistent herewith.

In re Johnson

Affirmed in part;

In part vacated and case remanded.

Chief Judge MORRIS and Judge HILL concur.