LEGINA DAWN HINKLE, Plaintiff-Appellee v. TIMOTHY RAY HARTSELL, Defendant-Appellant

No. COA97-1257

(Filed 29 December 1998)

**1. Evidence— judicial notice—high crime area**

The trial court abused its discretion during a child custody action by taking judicial notice sua sponte of murders, robberies and other violent crimes in and around the premises of the motel where defendant lived. The prevalence of crime in and about the premises and how this crime affects the safety of the motel's residents is no doubt a matter of debate within the community and the court cannot take judicial notice of a disputed question of fact.

**2. Child Support, Custody and Visitation— visitation— restricted—findings insufficient**

The trial court's findings in a child visitation action were insufficient to support severe restrictions on defendant-father's visitation rights where there was no competent evidence in the record that showed that defendant has ever engaged in any conduct that warrants forfeiting his rights to visitation or that the exercise of his right to visitation would be detrimental to the best interest of the child. Additionally, there is no rhyme or reason for the order which prohibited defendant from residing with any of his relatives.

HINKLE v. HARTSELL

[131 N.C. App. 833 (1998)]

Appeal by defendant from judgment entered 22 July 1997 by Judge Jack E. Klass in Davidson County District Court. Heard in the Court of Appeals 21 September 1998.

*Central Carolina Legal Services, Inc., by Scott B. Lewis, for defendant-appellant.*

*No brief filed by plaintiff-appellee.*

HUNTER, Judge.

Although Legina Dawn Hinkle (plaintiff) and Timothy Ray Hartsell (defendant) have never been married, they are the biological parents of the minor child, Nicholas Eugene Hartsell (Nicholas), born 13 October 1995. From the date of Nicholas' birth until 16 June 1996, he resided with plaintiff and defendant in Lexington, North Carolina in Davidson County. When the parties separated, defendant began living with his girlfriend in another county, where he remained during the pendency of this action. On 1 November 1996, plaintiff filed a complaint against defendant in which she sought full custody and control of Nicholas. Defendant answered requesting joint custody, and counterclaimed against plaintiff seeking child support payments.

The trial court sat without a jury, and plaintiff's evidence tended to show that she was gainfully employed and capable of providing for the financial, as well as the emotional, needs of Nicholas. Plaintiff served as the primary caretaker for Nicholas since his birth, and was capable of providing a loving and stable home for Nicholas. Further, plaintiff did not want defendant to have any unsupervised visitation with Nicholas due to her concerns that he was incapable of caring for him properly. In support of this contention, plaintiff testified that defendant was illiterate and had a learning disability.

In contrast, defendant's evidence tended to show he was capable of caring for Nicholas, in that during the time he and plaintiff lived together, he had taken care of Nicholas, including changing Nicholas' diapers and feeding Nicholas. Further, defendant testified that he had previously taken care of his girlfriend's and sister's minor children without any incidents. In addition, defendant confirmed that he resided in a motel room at the Country Manor Inn in Lexington, Davidson County, which consisted of one room and one bathroom, with cooking facilities and a crib for Nicholas. Defendant received $394.00 per month in Social Security disability income, and had expenses in excess of $600.00 per month.

Following a hearing, the trial court entered an order in which it awarded primary custody of Nicholas to plaintiff, and made the following finding with regard to defendant's visitation with Nicholas:

> 8. The Defendant lives in [an] unfit environment to have unsupervised visitation with the minor child, to wit, a motel room at the Country Manor Inn, Lexington, Davidson County, North Carolina. *The court takes judicial notice that murders, robberies and other violent crimes have taken place in and about the premises of the Country Manor Inn.*

(Emphasis added). The trial court then ordered that defendant receive only supervised visitation with Nicholas, with substantial restrictions attached.

On appeal, defendant contends the trial court erred by (1) taking judicial notice that murders, robberies and other violent crimes have taken place in and about the premises of the Country Manor Inn, where defendant resided in Lexington; and, (2) allowing defendant only supervised visitation with Nicholas.

### I. Judicial Notice

[1] Rule 201 of the N.C. Rules of Evidence permits the trial court to take judicial notice of adjudicative facts, which are defined as those facts which are:

> (b) . . . [N]ot subject to reasonable dispute in that [they] are either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

N.C. Gen. Stat. § 8C-1, Rule 201(b) (1992). The trial court is required to take judicial notice of certain facts only when a party requests it and supplies the necessary information pursuant to Rule 201(d); otherwise, it is discretionary with the trial court pursuant to Rule 201(c). N.C. Gen. Stat. § 8C-1, Rules 201(c) and (d); *see also* 1 Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence* § 24, at 97 (5th ed. 1998). In this case, it does not appear from the record that plaintiff requested the trial court to take judicial notice of the presence of criminal activity in and about the area where defendant resides, so we must assume that the trial court exercised its discretionary authority in doing so.

It is clear that judicial notice must be taken of the public laws of this State, of the United States, and of any other state or territory of the United States, as well as of any foreign country. *Brown*, § 25 at 100. Further, judicial notice is appropriate to determine the existence and jurisdiction of the various courts of the State; their terms or sessions, and judges; the counties comprising the various judicial districts; and, any earlier proceedings in the court involving the same case. *Id.*, § 26 at 102-103. In addition, "there [are] a wide range of miscellaneous facts which will or may be judicially noticed," including the following:

> [T]he laws of nature; human impulses, habits, functions and capabilities; the prevalence of a certain surname; established medical and scientific facts; well-known practices in farming, construction work, transportation, and other businesses and professions; the characteristics of familiar tools and appliances, weapons, intoxicants, and poisons; the use of highways; the normal incidence of the operation of trains, motor vehicles, and planes; prominent geographical features such as railroads, water courses, and cities and towns; population and area as shown by census reports; the days, weeks, and months of the calendar; the effect of natural conditions on the construction of public improvements; the facts of history; important current events; general economic and social conditions; matters affecting public health and safety; the meaning of words and abbreviations; and the results of mathematical computations.

*Id.*, § 27 at 104-109 (citations omitted). However, although our case law provides a laundry list of situations where judicial notice is appropriate, "[i]t is the spirit and example of the rulings, rather than their precise tenor, that is to be useful in guidance." *Id.*, § 27 at 105. With this in mind, it is our job to determine whether it was appropriate for the trial court in this case to take judicial notice of the fact that criminal activity has taken place in and about the Country Manor Inn in Davidson County.

As the statute implies, a court may take judicial notice of a fact if it is an "indisputable adjudicative fact." *In re D.S.*, 622 A.2d 954, 957 (Pa. Super. Ct. 1993). "A fact is considered indisputable if it 'is so well established as to be a matter of common knowledge.' Conversely, a court cannot take judicial notice of a disputed question of fact." *Id.* (citations omitted). "By taking judicial notice of a fact so commonly known, the court avoids the needless formality of introducing evidence to prove an incontestable issue." *Id.*

In *Thompson v. Shoemaker*, 7 N.C. App. 687, 173 S.E.2d 627 (1970), this Court was presented with a request by the plaintiff to take judicial notice "of the scarcity of low income housing in the City of Charlotte." *Id.* at 690, 173 S.E.2d at 630. This Court refused to do so, stating that "[t]he unavailability of low income housing in Charlotte is undoubtedly subject to debate and in our opinion it is not a factor that can be judicially noticed by this court." *Id.*

Similarly, in the case *sub judice*, the prevalence of crime in and about the premises of the Country Manor Inn, and how this crime affects the safety of its residents, is no doubt a matter of debate within the community. Therefore, rather than simply taking judicial notice that the area was a "high crime area," the trial court should have simply had a member of the community, possibly a Davidson County law enforcement officer, testify to the fact that numerous crimes had occurred in or about the premises. There is no indication in the record about whether the trial court actually heard evidence regarding the criminal activity at the Country Manor Inn. Therefore, we find that the trial court committed an abuse of discretion by judicially noticing this fact *sua sponte*, and the case must be remanded for further proceedings consistent with this opinion.

## II. Right to Reasonable Visitation

[2] Next, we address defendant's contention that the trial court erred by granting him only supervised visitation with Nicholas. At the outset, we note that it has often been stated that:

> Since minor children are entitled to the love and companionship of both their parents, insofar as that is possible and is consistent with their welfare, a parent whose child is placed in the custody of another person has a right of access to the child at reasonable times. The right of visitation is an important, natural and legal right, although it is not an absolute right, but is one which must yield to the good of the child. A parent's right of access to his or her child will ordinarily be decreed unless [1] the parent has forfeited the privilege by his [or her] conduct or [2] unless the exercise of the privilege would injuriously affect the welfare of the child, for it is only in exceptional cases that this right should be denied.

2 William T. Nelson, *Nelson on Divorce and Annulment* § 15.26, at 274-275 (2nd ed. 1961); *see also In re Custody of Stancil*, 10 N.C. App. 545, 550, 179 S.E.2d 844, 848 (1971).

In determining matters involving child custody and visitation rights of parents, the trial court is granted "wide discretionary power." *Swicegood v. Swicegood*, 270 N.C. 278, 282, 154 S.E.2d 324, 327 (1967) (where our Supreme Court announced that "[w]hile the welfare of a child is always to be treated as the paramount consideration, the courts recognize that wide discretionary power is necessarily vested in the trial courts in reaching decisions in particular cases"). However, a trial court's discretionary authority is not unfettered. N.C. Gen. Stat. § 50-13.5(i) states, in pertinent part:

In any case in which an award of child custody is made in a district court, the trial judge, prior to denying a parent the *right of reasonable visitation,* shall make a written finding of fact that the parent being denied visitation rights is an unfit person to visit the child or that such visitation rights are not in the best interest of the child.

N.C. Gen. Stat. § 50-13.5(i) (1995) (emphasis added). In interpreting this statute, this Court has held that "where severe restrictions are placed on the right [of reasonable visitation], there should be some finding of fact, supported by competent evidence in the record, warranting such restrictions." *Johnson v. Johnson*, 45 N.C. App. 644, 647, 263 S.E.2d 822, 824 (1980).

In this case, the trial court made the following finding:

8. The Defendant lives in [an] unfit environment to have unsupervised visitation with the minor child, to wit, a motel room at the Country Manor Inn, Lexington, Davidson County, North Carolina.

Thereafter, based upon this finding, the trial court entered an order which contained the following restrictions on defendant's visitation with Nicholas:

2. The Defendant shall have *supervised visitation* with the minor child in the home of the Plaintiff as follows:

    a. Every other Saturday and Sunday from 9:00 o'clock a.m. until 3:00 o'clock p.m.

    b. Father's Day from 9:00 o'clock a.m. until 5:00 o'clock p.m.

    c. On the minor child's birthday, October 13th, from 9:00 o'clock a.m. until 1:00 o'clock p.m.

    d. For a period of time during the day on Thanksgiving Day, Christmas Day and Easter Sunday.

3. The aforementioned *supervised visitation* shall continue until one of the following occurs:

    a. The Defendant finds suitable employment or receives permanent social security above poverty level and maintains his own home, mobile home or apartment with at least two bedrooms with at least a six (6) month lease in Davidson County, North Carolina. *The Defendant shall not reside with any relatives* or [fiancée] and must maintain a suitable living arrangement with a sufficient bed and facilities; or

    b When the minor child reaches the age of four (4) years and it is not necessary for the child to have close supervision which he needs while under the age of two (2) years.

(Emphasis added).

Upon review, we find the trial court's findings are insufficient to support these severe restrictions on defendant's visitation rights. There is no competent evidence in the record that shows defendant has ever engaged in any conduct that warrants defendant's forfeiting his right to visitation with Nicholas, *see Johnson v. Johnson*, 45 N.C. App. at 648, 263 S.E.2d at 825, or that the exercise of defendant's right to visitation would be detrimental to the best interests of Nicholas. In fact, we note that the trial court did find that defendant was "a fit and proper person to have secondary care, custody and control of [Nicholas] and it is in the best interests of [Nicholas] that his secondary care, custody and control be placed with the Defendant . . . ." Additionally, we see no rhyme or reason for the trial court's order which prohibited defendant from residing with any of his relatives. There is absolutely no competent evidence in the record that demonstrates why it would not be in Nicholas' best interest to reside with defendant's relatives.

Accordingly, that portion of the trial court's order relating to defendant's visitation rights is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

**N.C. INS. GUAR. ASS'N v. BURNETTE**

[131 N.C. App. 840 (1998)]

Reversed in part, vacated in part, and remanded.

Chief Judge EAGLES and Judge LEWIS concur.