IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-185

Filed: 7 January 2020

Buncombe County, No. 12 CVD 2858

JOSHUA D. PAYNICH, Plaintiff,

v.

HOLLY B. VESTAL,[1] Defendant.

Appeal by Defendant from order entered 13 August 2018 by Judge Andrea F. Dray in Buncombe County District Court. Heard in the Court of Appeals 1 October 2019.

> *Siemens Family Law Group, by Jim Siemens, for Plaintiff-Appellee.*
>
> *Michael E. Casterline for Defendant-Appellant.*

COLLINS, Judge.

Defendant Holly B. Vestal appeals the trial court's 13 August 2018 child custody modification order allowing her certain visitation with her child and denying her access to the child's school, medical, and counseling records. Defendant argues that the trial court erred in awarding her unreasonable visitation without finding her

---

[1] The caption in the order on appeal erroneously lists DEFENDANT B. VESTAL, Defendant. All other orders and motions in the Record on Appeal before this Court reference HOLLY B. VESTAL, Defendant.

unfit, and erred in denying her access to the child's records. We affirm the order for visitation and reverse the order denying her access to the child's records.

## I. Procedural History and Factual Background

Plaintiff Joshua D. Paynich and Defendant Holly B. Vestal were married in 1997. Their daughter was born in March 2011, and the parties separated a year later. In June 2012, Plaintiff filed a complaint for child custody, seeking joint custody. Defendant filed an answer and counterclaim, seeking primary custody. The parties divorced in May 2013. The trial court found this case to be one of high conflict, and appointed Linda Shamblin, PhD, to act as parenting coordinator on 23 September 2013. The parties shared custody of the child until 18 June 2014, when the trial court entered an emergency custody order, placing sole care, custody, and control of the child with Plaintiff. On 16 September 2014, the Court entered an order for a parenting capacity evaluation. Pursuant to this order, Defendant was awarded supervised visitation. Smith Goodrum, PhD, was appointed to conduct the parenting capacity evaluation.

After a custody hearing on 15 January 2015, the trial court entered a child custody order on 30 January 2015, finding and concluding that Plaintiff is a fit parent; Defendant is "not presently fit to parent, except under supervised conditions[;]" awarding Plaintiff sole care, custody, and control of the child; and awarding Defendant four hours of supervised visitation with the child two times per week, as

well as opportunities for supervised visits on special days. Defendant was ordered to undergo additional mental health evaluation and engage in therapy two times per week. Both parents were allowed access to the child's medical, dental, and educational records.

In 2016, pursuant to a motion to modify custody filed by Defendant, the court conducted another custody hearing. The court found a substantial change of circumstances in that Defendant appeared to be parenting appropriately within the confines of periodic supervised visitation; Ms. Georgia Pressman, MA, LPC, was providing therapy for the child and should "be in a position to report to the parenting coordinator if the Defendant's visitation with the minor child is compromising the minor child's proper development[;]" and the child was then five years old. The trial court maintained the child's sole care, custody, and control with Plaintiff. Defendant was allowed unsupervised visits with the child on Tuesdays from 3 p.m. to 7 p.m., and every other Saturday from 10 a.m. to 6 p.m. Beginning in January 2017, absent a contrary recommendation from Ms. Pressman, Defendant could also have unsupervised visits on alternate Thursdays from 3 p.m. to 7 p.m. Defendant could request additional daytime visits on special occasions through the parenting coordinator. Defendant was also allowed to request supervised, extended visits of up to five overnights during the Thanksgiving and Christmas holidays.

In January 2018, Defendant filed an amended motion to modify custody. The hearing on Defendant's motion was conducted over four days in June 2018. On 13 August 2018, the trial court entered a child custody modification order. The trial court made numerous findings of fact, including that "Defendant's conduct and the minor child's deterioration since entry of the August 11, 2016 Order are causally related, and constitute substantial changes of circumstance adversely and substantially affecting and pertaining to the minor child." The trial court continued sole care, custody, and control of the child with Plaintiff. The trial court concluded that the child's visitation with Defendant should be restructured. Defendant was allowed unsupervised, overnight visitation with the child on alternate weekends from 11 a.m. on Saturday to 3 p.m. on Sunday. The court ordered that holidays would continue to be shared as set out in the August 2016 order, which allowed Defendant unsupervised, daytime visits on special days, such as the child's birthday and Mother's Day, and during school recesses for Thanksgiving and Christmas, but required Defendant to request such visits from the parenting coordinator at least three weeks in advance. Extended holiday visits of up to five overnights would still require that Defendant be supervised.

The order denied Defendant access to the child's school, medical, and counseling records. It further denied her the right to attend school events and performances; to participate in making medical decisions involving the child; and to

participate in the child's counseling, unless requested by the child's treatment provider. From the 13 August 2018 order, Defendant appeals.

## II. Discussion

### A. Visitation

Defendant first argues that the trial court erred by denying her reasonable visitation without finding that she was an unfit person to have reasonable visitation, thus violating the mandate of N.C. Gen. Stat. § 50-13.5(i).

"The guiding principle to be used by the court in a custody hearing is the welfare of the child or children involved." *Brooks v. Brooks*, 12 N.C. App. 626, 630, 184 S.E.2d 417, 420 (1971). "While this guiding principle is clear, decision in particular cases is often difficult and necessarily a wide discretion is vested in the trial [court]." *Id.* The trial court "has the opportunity to see the parties in person and to hear the witnesses, and [its] decision ought not to be upset on appeal absent a clear showing of abuse of discretion." *Id.* (citation omitted). An abuse of discretion "is shown only when the court's decision is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Barton v. Sutton*, 152 N.C. App. 706, 710, 568 S.E.2d 264, 266 (2002) (internal quotation marks and citation omitted).

"A noncustodial parent's right of visitation is a natural and legal right which should not be denied 'unless the parent has by conduct forfeited the right or unless

the exercise of the right would be detrimental to the best interest and welfare of the child.'" *Johnson v. Johnson*, 45 N.C. App. 644, 646-47, 263 S.E.2d 822, 824 (1980) (quoting *In re Custody of Stancil*, 10 N.C. App. 545, 551, 179 S.E.2d 844, 849 (1971)). "In awarding visitation privileges the court should be controlled by the same principle which governs the award of primary custody, that is, that the best interest and welfare of the child is the paramount consideration." *Johnson*, 45 N.C. App. at 647, 263 S.E.2d at 824 (citation omitted).

"However, a trial court's discretionary authority is not unfettered." *Hinkle v. Hartsell*, 131 N.C. App. 833, 838, 509 S.E.2d 455, 459 (1998). N.C. Gen. Stat. § 50-13.5(i) provides, "In any case in which an award of child custody is made in a district court, the trial judge, prior to denying a parent the right of reasonable visitation, shall make a written finding of fact that the parent being denied visitation rights is an unfit person to visit the child or that such visitation rights are not in the best interest of the child." N.C. Gen. Stat. § 50-13.5(i) (2018). Thus, before the trial court may completely deprive a custodial parent of visitation, the statute requires a specific finding either (1) that the parent is an unfit person to visit the child or (2) that such visitation rights are not in the best interest of the child. *Johnson*, 45 N.C. App. at 647, 263 S.E.2d at 824 (citing *King v. Demo*, 40 N.C. App. 661, 253 S.E.2d 616 (1979)). This Court in *Johnson* "construe[d] the statute to require a similar finding when the right of *reasonable* visitation is denied. Thus, where severe restrictions are placed on

the right, there should be some finding of fact, supported by competent evidence in the record, warranting such restrictions." *Johnson*, 45 N.C. App. at 647, 263 S.E.2d at 824.

This Court has consistently held that limiting a parent to supervised visitation is a severe restriction which effectively denies a parent the right to reasonable visitation, and thus requires a finding of fact supporting such restriction. *See Hinkle*, 131 N.C. App. at 838-39, 509 S.E.2d at 459 (defendant awarded only supervised visitation every other Saturday and Sunday from 9:00 a.m. to 3:00 p.m., and specified times on holidays, and "the trial court's findings [were] insufficient to support these severe restrictions on defendant's visitation rights"); *Brewington v. Serrato*, 77 N.C. App. 726, 733, 336 S.E.2d 444, 449 (1985) (defendant awarded visitation privileges in North Carolina at plaintiff's home with others present; these "severe restrictions" were supported by the trial court's findings of fact); *Johnson*, 45 N.C. App. at 647, 263 S.E.2d at 824 (respondent awarded only supervised visitation one weekend a month and the trial court failed to make sufficient finding to support such restriction); *Holmberg v. Holmberg*, No. COA19-52, 2019 WL 4453850, at *3 (N.C. Ct. App. Sept. 17, 2019) (unpublished) (plaintiff awarded only occasional supervised visitation and the trial court's findings failed to satisfy the statutory mandate).

In this case, Defendant was allowed unsupervised, overnight visits every other weekend from Saturday at 11 a.m. to Sunday at 3 p.m. She was also allowed

unsupervised, daytime visits on special days, such as the child's birthday and Mother's Day, and during school recesses for Thanksgiving and Christmas. Defendant was additionally allowed supervised, extended visits of up to five overnights during school recesses for Thanksgiving and Christmas. Although Defendant's extended overnight visits during school recesses for Thanksgiving and Christmas must be supervised, the vast majority of her time with the child is unsupervised.

Defendant argues that absent a finding that Defendant is unfit, "she should be receiving far more time with her daughter, even if the time is confined to weekends[,]" and "it is unreasonable and unlawful, under *Johnson v. Johnson*, . . . to require supervision of any of [Defendant's] visits with her daughter." However, we conclude that the parameters placed on Defendant's visitation are not the type of "severe restrictions" our case law has determined effectively deny the right of reasonable visitation. Accordingly, N.C. Gen. Stat. § 50-13.5(i)'s mandate, as interpreted by *Johnson*, is not applicable here, and the trial court did not err by entering the visitation order without finding that Defendant was an unfit person to have reasonable visitation.

Defendant also argues that the supervised visitation ordered during Defendant's extended visits with the child is unsupported by the findings or the evidence. Defendant argues, "Having concluded that regular, unsupervised

overnight weekend visits with [Defendant] are beneficial to the minor child, it is irrational for the trial court to require extended holiday visits – visits which are limited to five nights, by the previous order – to be supervised."

The trial court made the following relevant findings of fact:

> 11. The Court received testimony from Georgia Pressman, the minor child's therapist. . . . With respect to Ms. Pressman's testimony, the Court finds[:]
>
>> a. Ms. Pressman's therapy with the minor child began in June of 2015 and has continued until recently.
>>
>> b. The minor child was 4 years old when therapy began. Ms. Pressman described that at the beginning of therapy, the minor child was "integrated" which the Court takes to mean developing appropriately.
>>
>> c. Ms. Pressman has seen, over the course of her treatment of the minor child, a gradual decline in the minor child's well-being. . . .
>>
>> . . . .
>>
>> g. The minor child commenced Kindergarten and commenced unsupervised visits with the Defendant in August of 2016. The Plaintiff shared with Ms. Pressman that the minor child was pushing limits and behaving aggressively following unsupervised contact with the Defendant. The Court finds the Plaintiff's report credible.
>>
>> . . . .
>>
>> l. On December 16, 2016, the Plaintiff advised Ms. Pressman that the minor child was soiling her underpants several times a day, since visitation with the Defendant over the 2016 Thanksgiving holiday. Prior to the holiday, these accidents were happening only 1-2 times per month. The Court finds the Plaintiff's report to Ms. Pressman to be credible.

. . . .

o. On August 2, 2017, the minor child met with Ms. Pressman after an extended visit with the Defendant and maternal grandparents. In private session, Ms. Pressman noted the minor child's dollhouse play was aggressive and Ms. Pressman noted that play between imaginary children and Defendant was aggressive.

. . . .

x. Ms. Pressman stated that the minor child is traumatized by . . . Defendant's behaviors such as those witnessed by the minor child on February 1, 2018, more particularly described below.

. . . .

12. The minor child was developing appropriately, relatively healthy, and happy, and integrated, as testified to by Georgia Pressman, when the order of August 11, 2016 was entered. At the time of this hearing, the credible and competent evidence suggests that the minor child is struggling developmentally, mentally, emotionally, and physically.

. . . .

20. The Defendant was called as her own witness in this proceeding. From her testimony, the Court finds that:

. . . .

c. The Defendant has unnecessarily complicated the minor child's life and caused the minor child stress.

d. The Defendant admits that she played a game with the minor child that involved the child touching her breast, that it was funny to her and that the minor child laughed to the point that she wet herself. The Defendant is unwilling or unable to acknowledge that this degree of stimulation for the minor child is not healthy for the minor child and compromises the minor child to [sic] return to homeostasis following visits.

e.  That the Defendant did testify that she respects the Plaintiff's religious beliefs and has no objection to the minor child being raised in a Christian home, however, she believes that her education should be separate and apart from that, as a considerable amount of school time is devoted to such studies and the child should be exposed to religion, but ultimately able to choose her own path.

f.  The Defendant is unable or unwilling to follow the court Order with respect to picking up the minor child, dropping off the minor child and has consistent difficulty maintaining boundaries with the Plaintiff and others.  Specific incidences of this behavior include, but are not limited to, the following:

> i.  On June 20, 2017, the Defendant vandalized the Plaintiff's truck during an exchange of [the child];
>
> ii. On September 12, 2017, the Defendant was unable to follow directions in a car pick up line.  The Defendant's behavior was angry and irrational and on full display to the minor child.  This incident was unnecessary and confusing for the minor child.
>
> iii.  On February 1, 2018, the Defendant caused a scene in Ms. Dowdy's classroom in front of the minor child.  At an exchange that night, the Defendant admits leaning against the Plaintiff's vehicle.  The vehicle was again scratched, though the Defendant denies scratching the vehicle. The Defendant left the place of exchange and drove to the Plaintiff's house, parking in proximity to the Plaintiff's driveway.  As the Plaintiff returned from the exchange to his home, with the minor child in the car, the Defendant stood between the Plaintiff's vehicle and the Plaintiff's driveway.  The Defendant stood in the headlights, in plain view of the minor child,

- 11 -

and struck a pose, patting her posterior. The Defendant appears not to understand that this strange behavior traumatizes the minor child, who was traumatized. This incident was unnecessary and confusing for the minor child.

. . . .

v. On March 28, 2018, the Defendant refused to exchange the minor child on time and refused to exchange in the typical place of exchange. The Defendant and her friend Maria Curran hid the minor child from the Plaintiff, causing him to run back and forth between the typical place of exchange, and Hickory Tavern where the Defendant claimed to be. The Plaintiff ultimately found the Defendant and minor child on the street in vicinity to Hickory Tavern. This incident was unnecessary and confusing for the minor child.

vi. On April 1, 2018, the Defendant dropped the minor child off at the Plaintiff's house while the Plaintiff was waiting at the usual place of exchange. No one was at the Plaintiff's house, though the Defendant assumed otherwise. The Plaintiff left the place of exchange, returned to his home, and found the minor child walking on his driveway. This incident was unnecessary. This incident was unnecessary and confusing for the minor child.

. . . .

viii. All the foregoing incidents have occurred while the Defendant has been in regular therapy with Dr. Katy Flagler. Despite therapy, the Defendant has been unable to regulate her behavior in order to avoid unnecessary incidents that are confusing for

the minor child. These behaviors appear to be overlooked by the Defendant's own therapist.

ix. All the 2018 incidents recited above have occurred since the Defendant filed her Motion to Modify custody, seeking additional time with the minor child. Despite knowing that her conduct would be explored in the course of a hearing on her motion to modify custody, the Defendant has persisted in unnecessary incidents that are confusing for the minor child.

. . . .

24. While there have been several events in the minor child's life that have been unsettling to her since August 11, 2016, the Court finds that the minor child's relationship with the Defendant, and her visitations doing [sic] the school week, with the Defendant, have been deleterious to the minor child's well-being developmentally, mentally, emotionally, and physically.

25. In finding that the minor child's well-being has declined since August 11, 2016, the Court relies heavily on testimony received from Georgia Pressman, the minor child's therapist during the relevant period; testimony from Melanie Dowdy, the minor child's 1st grade teacher at Asheville Christian Academy; testimony from Susan Montgomery, Head of the Lower School at Asheville Christian Academy; and, from Dr. Deidre Christy, who performed the Psychoeducational Evaluation.

29. The Court finds that the Defendant has disrupted the minor child's education, and increased the minor child's stress level, unnecessarily.

30. The stress the Defendant has caused the minor child is evident in the records of Ms. Pressman, and a part of the environmental stress identified by Dr. Christy.

31. The stress the Defendant causes the minor child must be mitigated so that the minor child can learn, and so that any learning difference or disorder, if any, can be properly

identified and so that further interventions, if any are required, can be implemented.

. . . .

35. That the child would benefit from having her time with the Defendant normalized and be able to spend an overnight at in [sic] the home of the Defendant, provided the Defendant can engage with the minor child in a manner that does not cause the minor child psychological harm.

. . . .

38. The Defendant's conduct and the minor child's deterioration since entry of the August 11, 2016 Order are casually [sic] related, and constitute substantial changes of circumstance adversely and substantially affecting and pertaining to the minor child.

"In a child custody case, the trial court's findings of fact are conclusive on appeal if supported by substantial evidence, even if there is sufficient evidence to support contrary findings." *Cox v. Cox*, 238 N.C. App. 22, 26, 768 S.E.2d 308, 311 (2014) (citation omitted). Any unchallenged findings are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

Although Defendant asserts that "[t]here is no evidence that [Defendant] is engaged in any behavior which would create any risk to her daughter[,]" Defendant does not specifically challenge any findings of fact as unsupported by the evidence; they are thus binding on this Court. *Koufman*, 330 N.C. at 97, 408 S.E.2d at 731. Moreover, the findings are supported by record evidence, including the testimony of Ms. Pressman, Melanie Dowdy, Susan Montgomery, and Defendant herself. These findings specifically indicate that the child's well-being has declined since August 11,

2016; Defendant's behavior has caused the child stress; the child's relationship with Defendant has been deleterious to the child's well-being; numerous incidents of Defendant's misbehavior have occurred since Defendant filed her motion to modify custody, seeking additional time with the child, despite knowing that her conduct would be explored in the course of a hearing on her motion to modify custody; Defendant has been unable to regulate her behavior in order to avoid unnecessary incidents that are confusing for the child; Defendant has persisted in unnecessary incidents that are confusing for the child; the child behaved aggressively following unsupervised contact with Defendant; after an extended visit with Defendant, the child's play was aggressive; the child would benefit from being able to spend an overnight in the home of Defendant, provided that Defendant can engage with the child in a manner that does not cause the child psychological harm. These findings amply support the trial court's conclusion and decree that it is in the best interest of the child that Defendant be supervised for extended visits.

**B. Access to Records**

Defendant next argues that the trial court erred by denying her access to her daughter's medical, educational, and counseling records, when there was no determination that her access to those records would negatively impact her daughter's welfare.

We review a trial court's order denying a parent access to a child's records involving the health, education, and welfare of the child under an abuse of discretion standard. *Brooks*, 12 N.C. App. at 630, 184 S.E.2d at 420 (a trial court's decision in a child custody matter "ought not to be upset on appeal absent a clear showing of abuse of discretion").

Pursuant to N.C. Gen. Stat. § 50-13.2(b), "each parent shall have equal access to the records of the minor child involving the health, education, and welfare of the child[,]" "[a]bsent an order of the court to the contrary[.]" N.C. Gen. Stat. § 50-13.2(b) (2018). It is well established that the fundamental principle underlying North Carolina's approach to controversies involving child custody is that "the best interest of the child is the polar star." *In re Montgomery*, 311 N.C. 101, 109, 316 S.E.2d 246, 251 (1984).

In *Huml v. Huml*, 826 S.E.2d 532 (N.C. Ct. App. 2019), this Court affirmed the trial court's order prohibiting defendant from obtaining "any information concerning the minor child including, but not limited to, requesting information through third party care givers, teachers, medical professionals, instructors or coaches[,]" where the findings of fact supported a determination that such prohibition was in the child's best interest. *Id.* at 540. While "agree[ing] that it is unusual for a parent to have such limited rights regarding his child," *id.* at 548, this Court determined that the

trial court did not abuse its discretion by eliminating his defendant's access to information based upon the specific facts of the case:

> In Finding of Fact 68, which has 23 subsections, the trial court noted the factual basis for the restrictions even to obtaining information from third parties. Father's actions and threats affected many third parties associated with the family, to the detriment of Susan. Mother's employer required her to "work from home because of safety concerns at her employer's office." At the time of the hearing, Mother had been working from home almost a year. Father's threats and actions made third-party professionals trying to help this family sufficiently concerned about their own safety they would not see him unless another person was present and at one point the child's pediatrician stopped seeing her because of Father's actions. The trial court found that Father's "anger and rage" are disturbing and have "had a detrimental impact on not only the minor child to not feel safe around the Defendant but the Plaintiff, her parents, Plaintiff's friends, Plaintiff's co-workers and various professionals involved with this family."
>
> The trial court also made detailed findings regarding Father's failure to follow the requirements of prior orders. Based upon the trial court's findings, if Father could continue to contact third parties such as teachers, physicians, and coaches to get information about the child, based upon his past behavior, it is likely that his anger and threats would make them fearful for their own safety, just as the third parties described in the order were. And to protect their own safety and the safety of their workplaces, these third parties may reasonably refuse to work with Susan, continuing to interfere with her ability to lead a normal life.
>
> Besides endangering the third parties who deal with Susan, allowing Father to contact them to get information about Susan would endanger Mother and Susan directly. Some of Father's actions were unusual and disturbing, such as taking the child to sit in a rental car in a parking

> garage with him when he was supposed to be visiting in a public place. Father had a car of his own but rented a car and backed into a parking space for these visits, apparently to avoid detection; this surreptitious behavior raises additional concerns. And if he were allowed to get information from third parties, Father would necessarily learn the addresses and locations where Mother and Susan could be found. For example, if Father were permitted to obtain Susan's educational information, he would have to know the name and location of her school, and he would learn from the school records which classes Susan attends and her usual daily schedule; he could then easily find Mother's home simply by following Susan's school bus or following any person who picks her up from school.

*Id.* at 548-49. This Court determined that "[u]nder these circumstances, it is in Susan's best interest to prevent Father from having access to information about her education and care because it protects Mother, Susan, and third parties who deal with them." *Id.* at 549. Thus, "[t]he trial court's detailed and extensive findings of fact support the decretal provisions, including barring Father from obtaining information from third parties." *Id.*

Although this Court did not tie its analysis to the provisions of N.C. Gen. Stat. § 50-13.2(b), we find its analysis instructive here. In the present case, the trial court made the following findings of fact relevant to its determination to deny Defendant access to the child's records:

> 15. The Court received testimony from Dr. Chris Mulchay, Clinical Psychologist.
>
> . . . .
>
> > j. Dr. Mulchay did not identify any issues which give him concern as to the Defendant's risk as a parent.

. . . .

17.    The Court received testimony from Dr. Linda Shamblin, the parenting coordinator in this case. With respect to Dr. Shamblin's testimony, the Court finds that:

> . . . .
>
> c.    Dr. Shambling (sic) has encouraged the Defendant to communicate with the school and teachers but not with the minor child's therapist. That Dr. Shambling did so to protect the child/therapist relationship, with the hope that the child therapist would not get embroiled in the parent's relationship.
>
> d. Dr. Shamblin testified that the information sharing between the parents is not good. . . .
>
> . . . .
>
> u.    Dr. Shamblin testified about her relationship with [Asheville Christian Academy] and denies having "set it up" in a way that was adverse to the Defendant.    That the school asked what the Defendant had done to get such restrictive visitation and whether it involved drugs or criminal behavior. That the school was clearly trying to make sure that it was keeping its other students safe.    That Dr. Shamblin did tell the school [Defendant] had mental health issues however, Dr. Shamblin told the school authorities that she felt that the school would be safe and that the Defendant did not pose a threat to the safety of the other students.
>
> v.    That the Defendant's animosity toward Dr. Shamblin has compromised Dr. Shamblin's ability to effectively fulfill her role as the parenting coordinator.
>
> w. Dr. Shamblin does not desire to stay in the case, but she is not asking to withdraw. Dr. Shamblin would prefer the Court make a decision to whether or not a new parenting coordinator would be ultimately, in the best interest of the minor child.

- 19 -

18. The Court received testimony from Melody Dowdy. Melody Dowdy was the minor child's First Grade Teacher at Asheville Christian Academy. With respect to Ms. Dowdy's testimony, the Court finds that:

> . . . .
>
> e. Ms. Dowdy has had conflict with the Defendant in her classroom. On February 1, 2018, the Defendant became visibly agitated in Ms. Dowdy's classroom, in front of the minor child, classmates and other parents, at pick up time. The Defendant abruptly left the classroom without taking the minor child then was heard to call out for "little Danika" in the hallway. Ms. Dowdy sent the minor child to her Defendant.
>
> f. Ms. Dowdy had a second incident with the Defendant in her classroom on February 6, 2018 when the Defendant was expressing frustration related to not receiving information from the school. In front of the minor child, the Defendant advised Ms. Dowdy that she would be returning to Court to address her dissatisfaction with the level of information she was being provided. This second incident also made Ms. Dowdy uncomfortable. This second incident also occurred in front of classmates and other parents.
>
> g. Ms. Dowdy has observed other unusual behaviors from the Defendant. These include the Defendant coming in Ms. Dowdy's classroom while class is in session while Ms. Dowdy is still teaching and sitting in the hallway outside Ms. Dowdy's class with a raincoat over her head covering her person while Ms. Dowdy's class is in session. The minor child witnesses these incidents.
>
> . . . .

19. The Court received testimony from Ms. Susan Montgomery who is the Head of the Lower School at Asheville Christian Academy. From Ms. Montgomery's testimony the Court finds:

. . . .

> b. Ms. Montgomery has had several interactions with the Defendant that have been negative. The first coincided with the beginning of school when the Defendant detected an irregularity on [the child's] name card, which read Paynich rather than Vestal.
>
> c. The second incident occurred in the school pick up line on September 12, 2017 when the Defendant was unable to follow directions. The Defendant became angry during this incident, using profanity to address Ms. Montgomery, in a lo[u]d voice, audible to parents, teachers, staff and students, including the minor child. Ms. Montgomery relayed a credible account of this incident, which could have been avoided by the Defendant.
>
> d. After the September 12, 2017 incident, the February 1, 2018 incident and the February 6, 2018 incident, the Defendant was banned from school.
>
> . . . .
>
> g. Allowing the minor child to return to Asheville Christian Academy for Second Grade was a difficult choice for the school, but [the minor child] can return for Second Grade.

> 29. The Court finds that the Defendant has disrupted the minor child's education, and increased the minor child's stress level, unnecessarily.

Based upon these findings, the trial court ordered, adjudged, and decreed, in relevant part, as follows:

> 2. The Defendant shall not have a right to school records, nor shall the Defendant have a right to attend school events or performances at this time.
>
> 3. The Defendant shall not have a right to medical records of the minor child and shall not have a right to participate in making medical decisions at this time.

> 4. The Defendant shall not have a right to counseling records of the minor child and shall not have a right to participate in the minor child's counseling unless it is at the request of the minor child's counselor/treatment care provider.

The findings of fact do not support a conclusion that it was in the best interest of the child to prevent Defendant from accessing the child's school, medical, or counseling records. While the findings indicate that Defendant's behavior at the child's school was disruptive, caused the child unnecessary stress, caused the child's teacher discomfort, and resulted in the head of the lower school banning Defendant from the school property, unlike in *Huml*, the findings do not indicate that her behavior "made third-party professionals trying to help this family sufficiently concerned about their own safety[.]" *Huml*, 826 S.E.2d at 548. To the contrary, "Dr. Shamblin told the school authorities that she felt that the school would be safe and that the Defendant did not pose a threat to the safety of the other students." Moreover, the disruption, stress, and discomfort caused by Defendant's actions at the school were addressed by the school banning her from its premises and the trial court's order prohibiting her from attending school events and performances, and eliminating her weekday visitation thereby eliminating her responsibility to pick up her daughter from school.

Additionally, unlike in *Huml*, the findings do not indicate that Defendant's continued ability to contact teachers, physicians, and other third parties to get her child's records would make them fearful for their own safety, or have any other direct

or indirect negative effect on the child. Most significantly, unlike in *Huml* where the findings showed that it was in the child's best interest to prevent Father from having access to information about her education and care because it protected the child, the child's mother, and third parties who dealt with them, no findings in the order before us show that Defendant's access to the information contained in the records would have a dangerous or even negative effect on the child or anyone dealing with the child, or that preventing Defendant from having access to the information contained in the records would protect the child or anyone dealing with the child.

As the trial court's findings of fact do not support a determination that it is in the child's best interest to prevent Defendant from having access to the child's school, medical, or counseling records, we reverse the decretal provisions denying her such access.

### III. Conclusion

We affirm the 13 August 2018 order as it relates to Defendant's visitation and reverse the decretal provisions of the order denying Defendant access to the child's school, medical, and counseling records.

AFFIRMED IN PART and REVERSED IN PART.

Chief Judge MCGEE and Judge HAMPSON concur.