IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-796

Filed 7 May 2024

Mecklenburg County, No. 17-CVD-3108

DARLA MARIE CARBALLO, Plaintiff,

v.

CHRISTIAN WEBER CARBALLO, Defendant.

Appeal by Plaintiff from order entered 20 December 2022 by Judge Tracy H. Hewett in Mecklenburg County District Court. Heard in the Court of Appeals 20 March 2024.

> *Robinson & Lawing, LLP, by Christopher M. Watford, for Plaintiff-Appellant.*
>
> *Dozier Miller Law Group, by Allison P. Holstein, Kelly A. Nash, and James R. Pennacchia, for Defendant-Appellee.*

COLLINS, Judge.

Plaintiff Darla Carballo appeals from the trial court's order granting Defendant Christian Carballo permanent primary legal and physical custody of their minor children and denying her visitation. Plaintiff argues that the trial court denied her visitation without making the requisite findings of fact pursuant to N.C. Gen. Stat. § 50-13.5(i), and that the trial court improperly delegated its judicial authority by allowing the children discretion to determine whether to have visitation with her. Because the trial court found that visitation with Plaintiff was not in the children's

best interests and any delegation of discretion to the children to determine whether to have visitation with Plaintiff was mere surplusage, we affirm.

## I.  Background

Plaintiff and Defendant were married in 1999, were separated in 2016, and are now divorced.  Plaintiff and Defendant share three children together: Easter, born in October 2003; Owen, born in July 2006; and James, born in October 2009.[1]  The trial court entered a consent order for permanent child custody ("Consent Order") on 4 December 2018 granting Plaintiff and Defendant joint legal and physical custody of the children.  The trial court entered an order appointing a parenting coordinator that same day.

Defendant filed a motion for ex parte emergency custody or, in the alternative, a temporary parenting arrangement on 17 November 2020, alleging that Plaintiff "has committed acts of physical and emotional abuse against the minor children," and that "[t]he children are presently refusing to go to [Plaintiff's] house, refusing to call, or participate in the visitation/custody schedule with her or at her home."  Defendant also filed a motion to modify the Consent Order, seeking sole permanent legal and physical custody of the children.  In support of his motions, Defendant specifically alleged:

> On November 6, 2020, [Plaintiff] yelled at [James] about
> his homework such that [James] started crying, shaking,

---

[1] We use pseudonyms to protect the identity of the children.  *See* N.C. R. App. P. 42.  Easter is no longer a minor and is not subject to the custody order.

> and put his fist in his mouth. When [Owen] tried to intervene, [Plaintiff] pushed her down forcefully. [Plaintiff] then told her boyfriend to call the police. A police officer responded, and during the call for service the officer said that there wasn't enough evidence to charge anyone because there was no "immediate threat". [Plaintiff] became smug and was heard laughing and taunting [Easter] while the children were crying. The next day she said it was her "right to punish" the children.

The trial court entered an order the next day granting Defendant emergency custody of the children, limiting Plaintiff's visitation to FaceTime and phone calls, and scheduling a return hearing.

Plaintiff filed an answer and objection to Defendant's motion for ex parte emergency custody or a temporary parenting arrangement and motion to modify the Consent Order on 23 November 2020. Plaintiff subsequently filed an amended answer and objection on 8 December 2020. The trial court appointed the Council for Children's Rights as Guardian ad Litem and Custody Advocate for the children on 14 December 2020.

Plaintiff filed a motion to modify the Consent Order on 22 December 2020, alleging that "[Defendant] continuously puts [Plaintiff] in a negative light to the children to a point where it has alienated the children from [her,] causing her to have an extremely strained relationship with the minor children[,]" and that "[t]he children have repeatedly refused to visit with [her]." Plaintiff also filed a motion for contempt, alleging that "[Defendant] refuses to allow [Plaintiff] to have reasonable

communication with the minor children when they are in his care."[2] Defendant filed a response to Plaintiff's motions.

At the request of the parenting coordinator, the trial court entered an order appointing a family therapist on 10 March 2021.

Plaintiff filed a motion on 12 April 2021 for ex parte emergency custody or, in the alternative, a temporary parenting arrangement. Plaintiff alleged that "[t]he children have become more resistant, hostile, angry and entitled against [her,]" and that "[t]his sense of entitlement has been fostered and generated from [Defendant's] constant apathetic and complacent attitude against [Plaintiff] and [Plaintiff's] relationship with the children." The trial court denied the motion without a hearing, finding that Plaintiff had failed to allege facts that met the criteria for ex parte emergency custody.

After a return hearing on the emergency custody order and Defendant's motion for a temporary parenting arrangement, the trial court entered a temporary custody order on 5 May 2021 granting Defendant primary physical custody of the children and Plaintiff visitation every other weekend. The order also allowed the parties "reasonable telephone and/or video contact with the children while in the other parent's care." The family therapist resigned by email on 10 September 2021 on the grounds that "[Defendant] stated that the children are unwilling to continue

---

[2] Plaintiff also filed various other motions, which are not relevant to this appeal.

facilitated visits with [Plaintiff] and he did not believe he could make them comply[,]" and that the case plan was "non-workable without everyone's commitment." Plaintiff filed motions for contempt on 8 April 2022 and 9 August 2022, alleging that "[Defendant] has failed to facilitate reasonable telephone contact as required."

After several hearings, the trial court entered an order modifying the Consent Order on 20 December 2022, granting Defendant permanent primary legal and physical custody of the children and denying Plaintiff "specific visitation with the children[,]" but allowing the children "to determine, with the assistance of their therapists, what contact and/or visitation they should have with [Plaintiff], if any." Plaintiff appealed.

## II. Discussion

Plaintiff argues that the trial court denied her visitation without making the requisite findings of fact pursuant to N.C. Gen. Stat. § 50-13.5(i), and that the trial court improperly delegated its judicial authority by allowing the children discretion to determine whether to have visitation with her.

### A. Standard of Review

When reviewing a trial court's decision to modify an existing custody order, we determine whether the trial court's findings of fact are supported by substantial evidence. *Malone-Pass v. Schultz*, 280 N.C. App. 449, 463, 868 S.E.2d 327, 339 (2021). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shipman v. Shipman*, 357 N.C. 471, 474, 586

S.E.2d 250, 253 (2003) (quotation marks and citation omitted). "[T]he trial court's findings of fact are conclusive on appeal if supported by substantial evidence, even if there is sufficient evidence to support contrary findings." *Peters v. Pennington*, 210 N.C. App. 1, 12-13, 707 S.E.2d 724, 733 (2011) (citation omitted). "Unchallenged findings of fact are binding on appeal." *Scoggin v. Scoggin*, 250 N.C. App. 115, 118, 791 S.E.2d 524, 526 (2016). "In addition to evaluating whether a trial court's findings of fact are supported by substantial evidence, this Court must determine if the trial court's factual findings support its conclusions of law." *Shipman*, 357 N.C. at 475, 586 S.E.2d at 254 (citation omitted). Conclusions of law are reviewed de novo. *Padilla v. Whitley de Padilla*, 271 N.C. App. 246, 247, 843 S.E.2d 650, 651 (2020).

"It is a long-standing rule that the trial court is vested with broad discretion in cases involving child custody." *Pulliam v. Smith*, 348 N.C. 616, 624, 501 S.E.2d 898, 902 (1998) (citation omitted). "[The trial court] has the opportunity to see the parties in person and to hear the witnesses, and [its] decision ought not be upset on appeal absent a clear showing of abuse of discretion." *Id.* at 625, 501 S.E.2d at 902 (quotation marks and citation omitted). "An abuse of discretion is shown only when the court's decision is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Paynich v. Vestal*, 269 N.C. App. 275, 278, 837 S.E.2d 433, 436 (2020) (quotation marks and citation omitted).

**B. N.C. Gen. Stat. § 50-13.5(i)**

Plaintiff argues that "the trial court's order vesting Owen and James sole

discretion over visitation is a *de facto* order for no visitation for which the trial court failed to make the required findings under [N.C. Gen. Stat.] § 50-13.5(i)." (capitalization altered).

"A noncustodial parent's right of visitation is a natural and legal right which should not be denied unless the parent has by conduct forfeited the right or unless the exercise of the right would be detrimental to the best interest and welfare of the child." *Johnson v. Johnson*, 45 N.C. App. 644, 646-47, 263 S.E.2d 822, 824 (1980) (quotation marks and citation omitted). "In awarding visitation privileges the court should be controlled by the same principle which governs the award of primary custody, that is, that the best interest and welfare of the child is the paramount consideration." *Id.* (citation omitted).

N.C. Gen. Stat. § 50-13.5(i) provides:

> In any case in which an award of child custody is made in a district court, the trial judge, prior to denying a parent the right of reasonable visitation, shall make a written finding of fact that the parent being denied visitation rights is an unfit person to visit the child or that such visitation rights are not in the best interest of the child.

N.C. Gen. Stat. § 50-13.5(i) (2023). "Thus, before the trial court may completely deprive a custodial parent of visitation, the statute requires a specific finding either (1) that the parent is an unfit person to visit the child or (2) that such visitation rights are not in the best interest of the child." *Paynich*, 269 N.C. App. at 279, 837 S.E.2d at 436 (citations omitted).

Here, the trial court made the following findings of fact:

> 76. This is [a] very unusual case, in that the adult nature of the children and their vehemently expressed desire outweighs the conventional wisdom and research that the children should have a relationship with both parents. The [c]ourt, with this order, does not preclude a relationship with [Plaintiff] and also believes that to be in the children's best interest but not forced visitation.
>
> . . . .
>
> 78. As best interest attorneys for the children, [the Council for Children's Rights] registered concerns for the children's mental health if visitation is forced, and formally recommended that [Plaintiff] be awarded no specific visitation at this time unless requested and agreed upon by the children.
>
> 79. The [c]ourt cannot make a finding that [Plaintiff] is not a fit and proper parent; however, it is not in the children's best interests to have forced visitation or contact with [Plaintiff] at this time.
>
> 80. Rather, it is in the children's best interests for them to have no specified visitation with [Plaintiff], but that they may have reasonable visitation and/or contact with [Plaintiff] at the discretion of the children and their therapists' recommendations.
>
> 81. It is in the best interest of these children that they determine, with the assistance of their therapists, what, if any, visitation or contact they have with [Plaintiff].

The trial court made detailed findings, including that "it is in the children's best interests for them to have no specified visitation with [Plaintiff]," and thus complied with N.C. Gen. Stat. § 50-13.5(i) prior to denying Plaintiff visitation. In support of these findings of fact, the trial court also made the following unchallenged findings of fact:

51. The middle child [Owen] shows symptoms of PTSD, at least in part, as a result of the dysfunctional relationship with [Plaintiff].

52. [James], the youngest child, has shown signs of distress, which is manifested in him chewing on his shirts, not being able to sleep alone (even at [Defendant's] home), and the cessation of funny, happy behavior. After visitation ceased with [Plaintiff] in August 2021, [James] has ceased chewing on his shirts, is able to sleep in his own room by himself, and has resumed his silly, happy behavior (like playing the kazoo).

53. The children have been exposed to hyper-derogatory comments about their father from [Plaintiff] and her parents.

54. The children have repeatedly complained about racist and homophobic comments made by [Plaintiff] and her family, and these issues were repeatedly addressed in therapy and with the parent coordinator. [Defendant] is Filipino, and the children are bi-racial, such that they internalize [Plaintiff's] comments personally. Additionally, [Plaintiff] texted [Easter] on their 18th birthday about a cake she had bought and the following: *"I transfer money into your account and you can use that however you woukd [sic] like- donate to queer organization, use for senior trip-whatever you would like".* Unfortunately, this message, which the [c]ourt believes was meant to be a sincere show of acknowledgement and interest in [Easter's] life, was not received as such which further demonstrates a tone-deafness on [Plaintiff's] part.

. . . .

56. The children are very close to one another and to [Defendant]. This is a result of the stressors from [Plaintiff] and not from any intentional manipulation.

. . . .

65. [Plaintiff] has been more aggressive and argumentative with professionals than most parents in those professionals' experience, which leads the court to believe that she also communicates, or has in the past with her

children in a similar manner.

The trial court's findings of fact support its conclusions of law that "[i]t is not in the children's best interest for [Plaintiff] to have specific visitation with the children at this time"; "[i]t is not in the children's best interest to be forced to visit with [Plaintiff]"; and "[i]t is reasonable in this case for the children to determine, with the assistance of their therapists, what contact and/or visitation they should have with [Plaintiff], if any."

As the trial court made the requisite findings of fact prior to denying Plaintiff visitation, and the findings of fact and conclusions of law are supported by the unchallenged findings of fact, the trial court did not abuse its discretion by denying Plaintiff visitation.

## C. Delegation of Judicial Authority

Plaintiff also argues that "the trial court improperly delegated its judicial authority over visitation by allowing the minor children the sole discretion to determine whether they would have any contact with [Plaintiff]." (capitalization altered). However, the trial court denied Plaintiff visitation after finding that visitation was not in the children's best interests. In light of the trial court's authority to deny visitation pursuant to N.C. Gen. Stat. § 50-13.5(i), any delegation of discretion to the children to determine whether to have visitation with Plaintiff is "mere surplusage[.]" *Routten v. Routten*, 374 N.C. 571, 579, 843 S.E.2d 154, 159 (2020). As the trial court denied Plaintiff visitation pursuant to N.C. Gen. Stat. § 50-13.5(i), the

trial court did not improperly delegate its judicial authority by allowing the children

discretion to determine whether to have visitation with Plaintiff.

### III.    Conclusion

For the foregoing reasons, we affirm.

AFFIRMED.

Chief Judge DILLON and Judge GORE concur.