IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-137

No. COA20-148

Filed 20 April 2021

Cleveland County, No. 17 JA 132

IN THE MATTER OF: L.G.A.

Appeal by respondent-mother from order entered 25 November 2019 by Judge

Micah J. Sanderson in District Court, Cleveland County. Heard in the Court of

Appeals 23 February 2021.

> *Charles E. Wilson, Jr., for petitioner-appellee Cleveland County Department of
> Social Services.*
>
> *Benjamin J. Kull, for respondent-appellant-mother.*
>
> *Michelle FormyDuval Lynch, for Guardian ad Litem.*

STROUD, Chief Judge.

¶ 1          Mother appeals from a review hearing order granting sole legal and physical

custody of their minor child to Father. Mother argues the trial court erred by denying

her motion for a continuance, by concluding it was in Lloyd's[1] best interest for Father

to have full custody, and by ordering her to pay for professional visitation supervision

without determining her present ability to pay. We affirm as to the denial of her

motion to continue and the decision to grant full custody of Lloyd to Father but vacate

---

[1] Pseudonyms are used to protect the identity of the juvenile.

and remand for additional findings on Mother's present ability to pay for professional visitation supervision.

## I. Background

¶ 2 Mother and Father have one child together, Lloyd. One week after Lloyd's birth, the parties were involved in an act of domestic violence while Father was holding Lloyd. Cleveland County Department of Social Services ("DSS") took custody of Lloyd following this incident, and he was adjudicated neglected on 15 December 2017. Father then regained custody of Lloyd, but after another incident of domestic violence Lloyd was placed in the custody of DSS.

¶ 3 On 2 May 2018 Mother and Father stipulated to findings of fact related to the second incident of domestic violence, and Lloyd was adjudicated as a neglected juvenile for a second time. Mother previously had several attorneys withdraw as counsel, and following a 1 May 2019 review hearing, the trial court indicated Mother's visitation would revert to a previous schedule if she was rude to a social worker. The next day Mother demanded to meet with her social worker, complained about the visitation plan entered the day before, and made 14 separate calls to DSS. Mother threatened the social worker and was asked to leave DSS's premises.

¶ 4 Mother was convicted of misdemeanor communicating threats against a previous social worker, and a condition of her bond was that she was prohibited from contacting her previous social worker. Mother violated the condition of her bond by

texting her previous social worker; as a result, her bond increased, and she was prohibited from entering DSS's premises.

¶ 5 Father filed a review motion on 9 August 2019 and requested custody of Lloyd. Mother filed a motion to continue the hearing, but her motion was denied. Father's motion was heard on 25 September 2019. An order following the review hearing was entered on 25 November 2019 and granted full physical and legal custody to Father. Mother was incarcerated at that time and the order provided for supervised visitation for Mother upon her release from jail. Mother timely appealed from the order.

## II.   Continuance

¶ 6 Mother argues, "[t]he court erred by denying [her] motion for a brief continuance because the importance of the constitutional and parental interests at stake far outweighed any competing interests."

### A. Standard of Review

¶ 7 "Ordinarily, a motion to continue is addressed to the discretion of the trial court, and absent a gross abuse of that discretion, the trial court's ruling is not subject to review." *In re A.L.S.*, 374 N.C. 515, 516-17, 843 S.E.2d 89, 91 (2020) (quoting *State v. Walls*, 342 N.C. 1, 24, 463 S.E.2d 738, 748 (1995)). "If, however, the motion is based on a right guaranteed by the Federal and State Constitutions, the motion presents a question of law and the order of the court is reviewable." *Id.* at 517, 843 S.E.2d at 91 (quoting *State v. Baldwin*, 276 N.C. 690, 698, 174 S.E.2d 526, 531 (1970)). "[D]enial

of a motion to continue is only grounds for a new trial when defendant shows both that the denial was erroneous, and that [s]he suffered prejudice as a result of the error." *Id.* (quoting *State v. Walls*, 342 N.C. at 24-25, 463 S.E.2d at 748).

¶ 8        Mother's motion for a continuance alleged constitutional violations of her right to due process, and that she would "be obligated to assert her Fifth Amendment right to not incriminate herself in her criminal matter . . . if the hearing is scheduled prior to her arraignment date during the October 7, 2019 trial term." Because Mother raised the constitutional basis for her argument before the trial court, we review this issue *de novo*. *See id.*

**B. Analysis**

¶ 9        Mother argues, "[t]he court improperly forced [her] to choose between exercising her right not to incriminate herself and testifying regarding the fate of her son." In her motion, Mother made general allegations about ongoing plea negotiations in her pending criminal charges and alleged she was scheduled to appear in superior court on the criminal matters in October 2019, when all of the criminal matters "will then be resolved in their entirety if she so chooses to tender a plead [sic] of guilty." She also alleged she was a "material witness" in defense of Father's motion for review, although she did not specify any particular issues her testimony may address. She did not allege any need for additional evidence, reports, or assessments that the court had requested or any other additional information regarding the child's

best interests. We note that Father's motion for review did not make any allegations regarding Mother other than a reference to their history of a "toxic" relationship with "incidents of domestic violence," referring to incidents that had already been addressed in prior hearings. The motion for review addressed Father's own progress since the prior orders, specifically his completion of "the IMPACT program," his successful unsupervised visitation for over two months, his residence in a "safe and stable home," his "resources to solely provide for the minor child's care," his completion of all requirements in the trial court's dispositional order, and the temporary placement of the child with him for care when the child was sick and the foster parents "were unable to find coverage for him."

¶ 10     Continuances in this context are governed by North Carolina General Statute § 7B-803:

> The court may, for good cause, continue the hearing for as long as is reasonably required to receive additional evidence, reports, or assessments that the court has requested, or other information needed in the best interests of the juvenile and to allow for a reasonable time for the parties to conduct expeditious discovery. Otherwise, continuances shall be granted only in extraordinary circumstances when necessary for the proper administration of justice or in the best interests of the juvenile. Resolution of a pending criminal charge against a respondent arising out of the same transaction or occurrence as the juvenile

> petition shall not be the sole extraordinary
> circumstance for granting a continuance.
>
> N.C. Gen. Stat. § 7B-803 (2013). Additionally, N.C. Gen.
> Stat. § 7B-1109(d) provides: "Continuances that extend
> beyond 90 days after the initial petition shall be granted
> only in extraordinary circumstances when necessary for
> the proper administration of justice, and the court shall
> issue a written order stating the grounds for granting the
> continuance." *Id.* § 7B-1109(d) (2013).

*In re C.J.H.*, 240 N.C. App. 489, 493, 772 S.E.2d 82, 86 (2015).

¶ 11      Under North Carolina General Statute § 7B-803, Mother had the burden of demonstrating good cause for a continuance, which may include the need for additional time "to receive additional evidence, reports, or assessments that the court has requested, or other information needed in the best interests of the juvenile and to allow for a reasonable time for the parties to conduct expeditious discovery." N.C. Gen. Stat. § 7B-803 (2019). Since she did not allege a need for this type of information, Mother had the burden to demonstrate "extraordinary circumstances when necessary for the proper administration of justice or in the best interests of the juvenile." *Id.*

¶ 12      Mother's sole basis for requesting a continuance was that she was awaiting trial for charges of communicating threats to a previous social worker and assistant district attorney. She argues she was effectively prevented from testifying to avoid waiver of her Fifth Amendment rights against self-incrimination. Based upon her argument, any parent who has pending criminal charges might be able to delay

hearings under Chapter 7B indefinitely, on the theory that the parent may need to present some testimony that could be used against her in a pending criminal charge, even if the charge is unrelated to the "same transaction or occurrence as the juvenile petition." *Id.* But North Carolina General Statute § 7B-803 does not support this argument, as it provides that even "[r]esolution of a pending criminal charge against a respondent arising out of the *same transaction or occurrence as the juvenile petition shall not be the sole extraordinary circumstance for granting a continuance.*" *Id.* (emphasis added). Thus, even if the criminal charges against Mother had arisen from the "same transaction or occurrence as the juvenile petition," she would still have to demonstrate *other* extraordinary circumstances to support a request for continuance. *See id.* The charges against Mother did not arise from the "transaction or occurrence" which led to the juvenile petition; they arose after the petition.

¶ 13 The trial court discussed Mother's motion for a continuance and all parties indicated that they did not intend to question her if she chose to testify:

> We then discussed testimony, was presented to the Court that Mr. Caulder nor Mr. Wilson nor Ms. Dow had any intent of questioning [Mother] at all. Did not say they wouldn't but said that they were not planning on asking her any questions at all. But, she one hundred percent will not be called as an adverse witness by any parties with the exception of [her own attorney].

The trial court also offered to act in a gate keeper role to prevent someone saying something "that could potentially harm their criminal case." But Mother chose not

to testify at the "advice of her criminal counsel, her GAL and [her own counsel]."

The trial court denied Mother's motion for a continuance in open court:

> [I]n this case mom had a motion to continue based on her "inability" to testify because she had pending criminal cases. This motion was denied and will still find mom had the ability to testify and is electing not to testify. It is not an inability. She does have a choice and she is choosing not to.

The trial court provided adequate safeguards to protect Mother's due process rights. The trial court properly determined that Mother was not statutorily entitled to a continuance, and Mother has failed to demonstrate any violation of her constitutional rights in the denial of her motion to continue. We affirm the trial court's decision to deny Mother's motion to continue.

## III. Custody

Mother argues, the trial "court erred by concluding it was in Lloyd's best interest to grant full custody to [Father] because (1) the court failed to account for the long-standing concerns regarding [Father's] ability to parent and (2) its ruling directly contradicted the GAL's recommendation that [Father] only be allowed overnight visits."

### A. Standard of Review

> Our "review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and whether the findings support the conclusions of law." The trial court's findings of fact "are conclusive on appeal when supported by any

competent evidence, even if the evidence could sustain contrary findings." . . . We review a trial court's determination as to the best interest of the child for an abuse of discretion.

*In re J.H.*, 244 N.C. App. 255, 268-69, 780 S.E.2d 228, 238 (2015) (citations omitted).

## B. Finding of Fact 46

Mother challenges Finding of Fact 46 which states, "In regards to the Respondent Father, there have been no criminal allegations, charges, or convictions for any type of domestic violence or any civil domestic violence claims in 50B Court." Mother argues "[t]his is simply not true." Mother is correct that some of these things had happened in the past, and these matters were addressed in the trial court's prior orders. But, in context, this finding addresses Father's progress since the former disposition of the case:

> 44. *At the former disposition of this case,* the Respondent Father was required to complete the domestic violence IMPACT Program, complete a psychological evaluation and parenting classes, enroll for counseling at Phoenix Counseling Center, and to maintain safe and stable housing.
>
> 45. *Since the former disposition of the case*, there have been no domestic violence issues with Respondent Father and he has maintained stable and suitable housing with [his ex-wife].
>
> 46. In regards to the Respondent Father, there have been no criminal allegations, charges, or convictions for any type of domestic violence or any civil domestic violence claims in 50B Court.

(Emphasis added.) This finding is supported by competent evidence, and Mother's objection is overruled.

### C. Finding of Fact 51

Mother challenges the portion of Finding of Fact 51 which deals with the duration of the IMPACT program:

> 51. The respondent father enrolled in and completed the IMPACT Program in July 2019. The Court has knowledge that the IMP ACT Program is a minimum of 26 weeks, and in this case the Respondent Father completed 30 weeks.

Father testified that he completed the IMPACT abuse intervention program. In the record, there is a letter from an IMPACT social worder which states Father was behind schedule to complete the program in 26 weeks. Accordingly, this finding is based on competent evidence.

### D. Finding of Fact 53

Mother argues the trial court "took improper judicial notice" in Finding of Fact 53:

> 53. The Court takes judicial notice of the widely-known benefits of the IMPACT program and how it has specifically improved the Respondent Father's behavior and has helped him to maintain a calm demeanor during direct examination and cross examination.

The Guardian ad Litem argues that Mother

> did not object to this *finding as the trial court announced it at the hearing,* and therefore it is not proper for appellate review. *See* N.C. R. App. Proc. 10(a)(1). Respondent

> mother presented no evidence to dispute this finding by the trial court and has not shown there is any reasonable dispute as to the known benefits of the IMPACT program. Accordingly, this assignment of error should be dismissed.

(Emphasis added.)

We first reject the Guardian ad Litem's argument regarding waiver of review of this issue based on Mother's failure to "object to this finding as the trial court announced it at the hearing." Under the Rules of Appellate Procedure, parties are not required to object to a trial court's findings of fact from the bench to preserve the issue for appellate review:

> Any such issue that was properly preserved for review by action of counsel taken during the course of proceedings in the trial tribunal by objection noted or which by rule or law was deemed preserved *or taken without any such action, including, but not limited to, whether the judgment is supported by the verdict or by the findings of fact and conclusions of law*, whether the court had jurisdiction over the subject matter, and whether a criminal charge is sufficient in law, *may be made the basis of an issue presented on appeal.*

N.C. R. App. P. 10(a)(1) (emphases added). In addition, an order is not final until "it is reduced to writing, signed by the judge, and filed with the clerk of court . . . ." N.C. Gen Stat. § 1A-1, Rule 58. The trial court is not required to announce its rulings at the conclusion of a hearing and often will take the case under advisement before later issuing a written order or advising the parties and counsel of the ruling.

Here, at the conclusion of the hearing, the trial court directed Father's counsel

to prepare the written order and announced a general summary of the findings of fact and other provisions in the order, but Mother's counsel did not object, and should not have objected, to the trial court's rendition of its ruling, as there is no legal basis for an "objection" in this context. The trial court mentioned "judicial notice" during the rendition of the order, but judicial notice was not mentioned during the presentation of evidence, other than in reference to the prior orders entered in this case. And even when a trial judge announces a ruling and findings in open court, the written, signed, and filed order may not have exactly the same provisions as announced at the conclusion of the hearing. A party would have no way of "objecting" to a provision of the order until after the order is written, signed, and filed; that is the purpose of an appeal. Thus, we address Mother's argument as to whether the trial court took improper judicial notice of "the benefits of the IMPACT program."

¶ 23        Judicial notice is governed by Rule 201 of the North Carolina Rules of Evidence:

> (b) Kinds of facts. — A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
>
> (c) When discretionary. — A court may take judicial notice, whether requested or not.
>
> (d) When mandatory. — A court shall take judicial notice if

requested by a party and supplied with the necessary information.

(e) Opportunity to be heard. — In a trial court, a party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

N.C. Gen. Stat. § 8C-1, Rule 201.

This Court has noted that an "indisputable fact" under Rule 201

" . . . 'is so well established as to be a matter of common knowledge.' Conversely, a court cannot take judicial notice of a disputed question of fact." "By taking judicial notice of a fact so commonly known, the court avoids the needless formality of introducing evidence to prove an incontestable issue."

*Hinkle v. Hartsell*, 131 N.C. App. 833, 836, 509 S.E.2d 455, 458 (1998) (citations omitted).

Here, the record includes evidence regarding Father's own participation in the IMPACT program, but there was no evidence regarding the overall success of the program and no indication that the program's beneficial effects were "so well established as to be a matter of common knowledge." *Id.* In this case, the trial court was not so much taking judicial notice of the details or historical record of the IMPACT program as noting a fact known to the trial judge, based upon his personal experience, but not an "indisputable" matter which is a "matter of common knowledge." *See id.* While the trial court's own personal knowledge and experience

must and should inform any ruling, the specific findings of fact must be based upon the evidence presented in the case and not upon the judge's own memory or knowledge. As this Court noted in *Hensey v. Hennessy*, "[A] judge's own personal memory is not evidence." 201 N.C. App. 56, 67, 685 S.E.2d 541, 549 (2009). "Appellate review of the sufficiency of the evidence to support the trial court's findings of fact is impossible where the evidence is contained only in the trial judge's memory." *Id.* at 68, 685 S.E.2d at 549.

¶ 26        "We have held that '[a] matter is the proper subject of judicial notice only if it is "known," well established and authoritatively settled.' Conversely, '[a]ny subject . . . that is open to reasonable debate is not appropriate for judicial notice.'" *In re R.D.*, 376 N.C. 244, 852 S.E.2d 117, 132 (2020) (alterations in original) (citations omitted). Although the trial court no doubt had personal knowledge of the IMPACT program in general and had apparently seen good results from the program, the benefits of the IMPACT program are not "well established" or "authoritatively settled" in the manner appropriate for judicial notice under Rule 201. Accordingly, the portion of this finding regarding the "widely-known benefits of the IMPACT program" is not supported by the evidence. But the remainder of Finding of Fact 53—that the IMPACT program had "helped [Father] to maintain a calm demeanor during direct examination and cross examination" is supported by the record and was not based upon judicial notice. The record includes evidence about Father's participation in the

program, and the trial court observed Father's demeanor at the hearing. The pertinent portion of the challenged finding was the effect of the IMPACT program on Father, not its general success rate or reputation, and this portion of Finding of Fact 53 is supported by the record.

**E. Finding of Fact 58**

¶ 27 Mother argues in Finding of Fact 58 the trial court "made an unreasonable, unsupported inference about the impact of [Father's] mental disability on his ability to parent":

> 58. In spite of a documented mental disability of the Respondent Father, upon observing him on the witness stand, and although he did not recall every date, the Court has no concerns about his mental capacity or parenting capabilities. He was able to recall specific dates, locations and other information about exhibits when presented by his counsel and was able to read documents that were provided to him.

¶ 28 Here, Mother's argument goes to the trial court's assessment of the weight and credibility of the evidence and its evaluation of Father's demeanor, and these are matters well within the discretion of the trial court to determine as the finder of fact:

> The function of trial judges in nonjury trials is to weigh and determine the credibility of a witness. The demeanor of a witness on the stand is always in evidence. All of the findings of fact regarding respondent's in-court demeanor, attitude, and credibility, including her willingness to reunite herself with her child, are left to the trial judge's discretion. Therefore, any of the findings of fact regarding the demeanor of any of the witnesses are properly left to

the determination of the trial judge, since she had the opportunity to observe the witnesses.

*Balawejder v. Balawejder*, 216 N.C. App. 301, 318-19, 721 S.E.2d 679, 689-90 (2011) (citations omitted) (quoting *Matter of Oghenekevebe*, 123 N.C. App. 434, 440-41, 473 S.E.2d 393, 398-99 (1996)). This argument is overruled.

## F. Finding of Fact 60

¶ 29 Mother argues Finding of Fact 60 "inexplicably ignores the well-documented, long-standing concerns regarding [Father's] ability to parent":

> 60. The Department of Social Services has not offered any concerns regarding the ability of the Respondent Father to parent capably and neither have any other third parties offered any concerns as to the same.

¶ 30 Again, as with the trial court's references to domestic violence in Finding of Fact 46, Mother's argument hearkens back to earlier incidents and hearings in the case, but in context, the trial court was referring to the evidence presented at this hearing and Father's circumstances as of that date. Mother is correct that DSS did have concerns regarding Father in the past, but in addressing Father's motion for review, based upon the evidence presented at this hearing, the trial court's finding is supported by the record.

¶ 31 At the hearing on Father's motion for review, a child permanency worker with DSS testified that she had no concerns regarding Father's ability to parent and recommended physical and legal custody be returned to Father. The GAL also

testified that they were not opposed to custody being returned to Father. This finding is supported by competent evidence.

### G. Conclusion of Law 5

¶ 32     Mother argues, "[t]he findings do not support the conclusion that it was in Lloyd's best interest that [Father] be granted full custody":

> 5. It is in the best interest of the minor child that the Respondent Father be granted the sole legal and physical custody of the minor child with a provision for limited supervised visitation by the Respondent Mother, when she is no longer being held in custody.

¶ 33     We have already determined the trial court's findings of fact were, with the small exception of the reference to "judicial notice" discussed above, are supported by the evidence. Thus, for purposes of appellate review, we must consider whether all of the findings of fact support the trial court's conclusion of law.

¶ 34     The trial court's findings demonstrate that after the previous review order, Father's progress with his plan showed his ability to safely parent Lloyd. In contrast, Mother's actions since the previous review order led to her arrest and incarceration instead of progress in becoming a suitable parent. This conclusion is supported by the trial court's findings of fact, and the trial court did not abuse its discretion in making this determination.

### IV.     Payment for Professional Supervision

¶ 35     Mother argues the trial court "erred by ordering [Mother] to pay for

professional supervision for her visits because it made no findings regarding (1) her present ability to pay or (2) the cost of professional supervision."

## A. Standard of Review

¶ 36        This Court reviews the trial court's decree as to supervised visitation for abuse of discretion. *In re E.M.*, 249 N.C. App. 44, 57, 790 S.E.2d 863, 874 (2016). In particular, the trial court must consider whether the parent would actually have the ability to exercise the visitation as ordered. *See id.* "Failure to make [a finding on whether a parent is able to pay for supervised visitation once ordered] requires this Court to vacate the portion of the order requiring that the visitation be at Respondent's expense and to remand for entry of a new order containing the required findings of fact." *Id.*

## B. Analysis

¶ 37        Mother argues, "[f]indings about ability to pay must address a parent's present—not past—ability." We agree.

¶ 38        Here the trial court found in relevant part:

> 82. That upon the mother's release from jail, the Court does make provisions as follows for the Respondent Mother to have visitation with the minor child as follows:
>
>> a. The Respondent Mother may exercise supervised visitation when she is released from custody for one, two-hour period every two weeks.
>>
>> b. If the parties cannot agree on a visitation

date, then the supervised visitation will be every other Thursday from 2:00 PM to 4:00 PM.

c. The visitation will be supervised by a third-party upon agreement of the parents; however, if the parents cannot agree on a third-party supervisor, the Respondent Mother will be responsible to retain a professional supervisor for such a purpose. Should Respondent Mother retain a professional supervisor, Respondent Father cannot refuse such visitation based on his disagreement with the Respondent Mother's choice in professional supervisor.

d. Respondent Mother does have the financial ability to retain a professional supervisor for visitation. In previous hearings, Respondent Mother has informed this court that prior to being incarcerated she worked two jobs at the same time. Respondent Mother has also had the financial ability to retain private counsel. The Respondent mother has previously financially been able to post a $10,000 secured bond. Respondent Mother has also previously stated through counsel, other than Attorney Hughes, that she has the ability to post the current bond but is choosing not to. All of these previous statements do satisfy this court that she does have the financial ability to comply with and retain a professional supervisor for future supervised visitation.

e. Respondent Father and Respondent Mother are not to have any contact with one another. Respondent Mother must have an agreed upon third-party supervisor or a professional supervisor to make such visitation arrangements with the Respondent

Father.

¶ 39    Even though Mother previously had two jobs and the ability to post a secured bond, these findings do not address her ability to pay for supervised visitation following her incarceration, when the supervised visitation would begin.  First, since Mother's criminal charges were still pending, there was no evidence as to when she would be released from incarceration or what her circumstances would be at that time.  There was no evidence Mother's prior employment would still be available to her after her release.  All the evidence would suggest that her financial situation will likely be different when she is able to resume visitation.  We vacate the portion of the order requiring Mother to pay for supervised visitation and remand for additional findings of fact on Mother's ability to pay supervision fees at the relevant time, after she is released from incarceration and able to exercise visitation.  In addition, the trial court shall make findings on the costs associated with a professional supervisor and who may qualify as a professional supervisor.

## V.    Conclusion

¶ 40    For the foregoing reasons, we affirm the trial court's denial of Mother's motion to continue and the order granting full custody of Lloyd to Father, but we vacate the provisions regarding Mother's financial responsibility for professional supervision and remand for additional findings regarding the qualifications of a "professional" supervisor, the cost of supervision, and Mother's ability to pay for professional

supervision. The trial court shall receive additional evidence as needed to address this issue on remand.

AFFIRMED IN PART; VACATED IN PART AND REMANDED.

Judges MURPHY and GRIFFIN concur.